PEOPLE ex rel. SHANNON v. MAGEE, Police Commissioner.

(Supreme Court, Appellate Division, Third Department. November 16, 1900.)

1. MUNICIPAL CORPORATIONS—OFFICERS—DISCHARGE—CHARGES—HEARING—JURISDICTION.

Under Act April 19, 1899 (Laws 1899, c. 370), providing that no veteran employed in any public department or on any public works in the state shall be discharged without a hearing on stated charges preferred, the police commissioner of a village is the only person entitled to hear charges preferred against a janitor of the police station, whether he is prejudiced against such janitor or not.

2. SAME—EVIDENCE.

On hearing, by a police commissioner, of charges preferred against a veteran employed as janitor of the police station, evidence to show prejudice on the part of such commissioner against such veteran is inadmissible.

3. SAME—GROUNDS FOR DISCHARGE—SUFFICIENCY OF EVIDENCE.

Charges were preferred against a janitor of a police station, alleging that he did not properly make the beds of the policemen residing at the station; that in waking certain of the policemen he was unnecessarily noisy, so as to disturb the others; that he was careless, and permitted certain portions of the station to become offensively dirty. From the evidence it appeared that the patrolmen making the complaint slept at the station, though not required to, and ate lunches, read the paper, and played cards near the place alleged by them to have been offensive. The chief of police, under whose charge the janitor was, swore that he discharged his duty faithfully, and that no complaint had been made of him by the witnesses for the prosecution. There was no evidence that any remonstrance had been made to the janitor himself, except on one or two occasions, when the faults had been remedied. *Held* insufficient to warrant his discharge.

Certiorari on relation of David Shannon to review the action of John Magee, police commissioner of the village of Lansingburg, discharging applicant from service as janitor and station-house keeper of the police station in such village. Reinstatement ordered.

The relator is a veteran of the Civil War. In 1894 he was appointed as janitor and station-house keeper of the police station in the village of Lansingburg. He served as such until May 1, 1899, when he was summarily removed by the respondent. Upon April 19, 1899, chapter 370 of the Laws of 1899 took effect, which entitled the relator to a trial upon charges preferred before discharge. Upon October 3, 1899, the respondent reinstated the relator pursuant to a mandamus issued out of the supreme court. Upon the 19th day of December, 1899, the relator was notified of the charges upon which this trial has been had.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Thomas S. Fagan, for relator.
R. S. Styles, for respondent.

SMITH, J. At the threshold of the argument the jurisdiction of the police commissioner is challenged by reason of his prejudice. The relator sought upon the trial to show that the police commissioner had made threats in effect that he would get rid of this relator, even though compelled by mandamus to reinstate him after his former dismissal. Upon objection this evidence was excluded by the police commissioner, to which ruling exception was taken. This exception, we think, is without merit. By the statute the police commissioner was the only tribunal authorized to try charges against the relator. Whatever may be his prejudice, therefore, his jurisdiction is undoubted, for otherwise the relator could not be tried or removed, however flagrant his offenses. If this proposition need authority, it is abundant. See People v. Williams, 51 App. Div. 102, 64 N. Y. Supp. 457; People v. Common Council, 85 Hun, 602, 33 N. Y. Supp. 165; In re Ryers, 72 N. Y. 1. Nor has this court held a contrary doctrine. Whatever rule of law may be gleaned from the opinions of the learned justices who wrote in the case of Miller v. Elmendorf, 51 App. Div. 173, 64 N. Y. Supp. 775, two of the justices dissented, and the writer concurred in the result only upon the ground that the determination was against the weight of evidence. It is urged, however, that, even though the prejudice of the police commissioner did not disqualify him, nevertheless it was a fact competent for consideration by the appellate tribunal in the review of his determination. With this contention we cannot agree. It would be unseemly, in the administration of the municipal affairs of a corporation, if an officer authorized to try offenses were bound to hear and report evidence as to his own bias which he is precluded even from disputing. If, in this system of law by which the police commissioner is given authority to try such cases, a prejudiced judge is sometimes found, the misfortune is one incident to the system. Our review of the determination of this commissioner must be based purely upon the evidence upon which he acted, and if there is, in such evidence, a reasonable justification for his conclusion, we are bound to recognize it as just and final. Upon the merits of this controversy we find substantially three charges made against the relator: First, that he did not properly make up the beds of the policemen who slept at the station; secondly, that in wakening certain policemen, as was his duty, at 7 o'clock in the morning, he made unnecessary noise, to the disturbance of the others who were sleeping; thirdly, that he was uncleanly and untidy, and allowed dirt and dust to accumulate in the station house, and especially that in washing the spittoons in a certain sink in the cell room of the station house he left refuse which caused an unwholesome and disagreeable odor. Certain of the patrolmen gave evidence in support of the charges, while others gave evidence in behalf of the relator in denial thereof. The probability of the charges is strongly questioned from the fact that these very patrolmen who make these complaints constantly slept at the station house when they were not required to sleep there, and ate their lunches, read papers, and played cards within 10 feet of this sink which they claim was made foul by the uncleanly habits of this janitor. Without reviewing in detail the evidence adduced, there ap-

pear two facts which to us have controlling influence in reviewing this determination. This relator was under the direct charge of the chief of police, whose duty it was to give him directions and orders. The chief of police swears upon the witness stand in full vindication of his faithful discharge of his duty, and, more than that, he swears that never at any time was there any complaint made to him by any of the patrolmen who were sworn for the prosecution. But again, not only was not complaint made to the chief of police, who had charge of this janitor, but not one word of remonstrance was ever said to the janitor himself during all this period in which this neglect of duty is claimed to have existed. If this janitor had habitually neglected properly to make the beds of the prosecuting patrolmen; if habitually, in wakening patrolmen under the direction of the chief, he had unnecessarily made noise to the disturbance of those who were sleeping; if he had allowed the station house to become uncleanly, and had so cleansed the cuspidors as to leave an unwholesome place where these patrolmen were accustomed to eat their lunches, to read, and to play cards,—it is most unnatural that at least one of them should not have remonstrated with him for at least one of these derelictions. There are one or two matters to which his attention was called by the patrolmen which are not made a cause of complaint. In those matters he at once made correction. We are of opinion that offenses too trifling for a single remonstrance from patrolmen to this janitor, who was with them daily, are too trifling to call for his dismissal.

Determination of the police commissioner reversed, with $50 costs and disbursements, and reinstatement ordered. All concur; KEL-LOGG, J., in the result.