THE PEOPLE OF THE STATE OF NEW YORK ex rel. COR-
NELIUS G. HAYES, Appellant, *v.* RHINELANDER WALDO,
as Commissioner of the Police Department of the City
of New York, et al., Respondents.

New York (city of) — trial of police officer, upon charges pre-
ferred against him, before first deputy police commissioner —
power of deputy commissioners to hear and determine charges
against policemen and prescribe punishment thereof, in the
absence or disability of the police commissioner — when not
disqualified.

1. The relator was in charge of the inspection district in the city
of New York known as the "Tenderloin." He was called upon by
the police commissioner in the presence of his fellow-inspectors and
another to report in regard to his instructions as to disorderly
houses. In reply thereto he made a statement to the effect that he
had been directed by the police commissioner not to obtain evidence
against premises known as houses of prostitution. He was there-
upon suspended and a charge preferred against him by a deputy
commissioner that he had made a false official statement, specifying
the statement above referred to. He was tried before the first
deputy commissioner, found guilty, and dismissed from the force.
The matter comes up for review on certiorari. *Held,* that the charge
against the relator is not frivolous but very substantial. It is suffi-
cient as matter of law, assuming it to be true, to warrant his removal.

2. The order of the Appellate Division dismissing the writ of cer-
tiorari and unanimously affirming the proceedings before the com-
missioner necessarily includes a decision that there was evidence
supporting or tending to sustain the finding of the commissioner
that the relator is guilty of the charge made against him, and this
court has no authority to consider the question of fact.

3. The fourth deputy commissioner made the charge against the
relator, and the first deputy commissioner heard the evidence pro-
duced on the trial of such charges. The police commissioner is
expressly authorized to define the duties of the deputy commis-
sioners and may delegate to either of them any of his powers
except the power of making appointments and transfers.

4. It appears from the record that the relator claimed that prior
to his dismissal he had a conversation with the deputy before whom
the trial was had, after which he went with that deputy before the
police commissioner, and he testified that when before the police

commissioner, and in the presence of the deputy, a conversation was had as to which relator gave evidence, relative to the subject-matter of the charge.   *Held*, that the fact that a judge has some personal knowledge of an act or statement about which uncontradicted testimony is given upon a trial held by him should not affect the judgment rendered or order made therein particularly if the testimony received is not of substantial importance, and that the deputy was not disqualified from acting at the trial as a deputy police commissioner or as an acting police commissioner in the absence or disbility of the commissioner by the fact that he was present at this conversation.

5. Neither the charter of the city nor the rules of the police department require that in a case where the charges are tried by a deputy in any event the punishment must be prescribed by another person. Nor is it a valid objection that the order dismissing relator from the department was signed by the deputy as acting police commissioner, instead of by the commissioner himself.   The authority of the first deputy to act affirmatively appears by his return to the writ, and the commissioner's personal interest in the result of the trial disabled him from acting as commissioner therein, and made it the duty of the first deputy commissioner to act as commissioner.

*People ex rel. Hayes* v. *Waldo*, 159 App. Div. 901, affirmed.

(Argued April 20, 1914; decided June 16, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 7, 1913, which dismissed a writ of certiorari and confirmed the proceedings of the defendant deputy police commissioner in dismissing the relator from the police force of the city of New York.

The facts, so far as material, are stated in the opinion.

*Simon Fleischmann, Thomas D. Thacher* and *Reeve Schley* for appellant.   The charge against relator was insufficient, as matter of law, assuming it to be true, to warrant his dismissal.   (*Maher* v. *Hibernia Ins. Co.*, 67 N. Y. 283; *State* v. *Smith*, 63 Vt. 201; *Wood* v. *State*, 48 Ga. 192; *Hatcher* v. *Dunn*, 102 Iowa, 411; *State* v. *Brady*, 100 Iowa, 191; *U. S.* v. *Peters*, 87 Fed. Rep. 894; *Putnam* v. *Osgood*, 51 N. H. 192; *Matter of Blum*, 9 Misc. Rep. 571; *People* v. *Glennon*, 37 Misc. Rep. 1;

*Hale* v. *Burns,* 44 Misc. Rep. 1; *Phelps* v. *McAdoo,* 47 Misc. Rep. 524; *Devlin* v. *McAdoo,* 49 Misc. Rep. 57.) The order of removal is void, having been made by one of the deputy commissioners, who, so far as appears from the record, had no jurisdiction or authority to make the order. (*People ex rel. Harvey* v. *Partridge,* 180 N. Y. 237; *People ex rel. Campbell* v. *Partridge,* 99 App. Div. 410; *Gilbert* v. *York,* 111 N. Y. 544; *Frees* v. *Ford,* 6 N. Y. 176; *Smith* v. *Central Trust Co.,* 154 N. Y. 333; *Shade* v. *N. P. Ry. Co.,* 206 Fed. Rep. 353; *People ex rel. Waldron* v. *Soper,* 7 N. Y. 428; *People ex rel. Allen* v. *Knowles,* 47 N. Y. 415; *People ex rel. Bodine* v. *Goodwin,* 5 N. Y. 568; *Starr* v. *Vil. of Rochester,* 6 Wend. 564; *People ex rel. Dougan* v. *Greene,* 97 App. Div. 404.) The order of removal is void, having been made by Deputy Commissioner McKay, assuming to act as " acting police commissioner," after having, himself, tried relator upon the charge. Such removal, under the circumstances, could have been lawfully made only by the commissioner himself, or by an acting commissioner, other than Deputy Commissioner McKay. (*People ex rel. Campbell* v. *Partridge,* 99 App. Div. 410; *U. S.* v. *Kirby,* 7 Wall. 482; *People* v. *Lacomb,* 99 N. Y. 43; *L. S. & M. S. Ry. Co.* v. *Roach,* 80 N. Y. 339; *People* v. *Comrs. Taxes of N. Y.,* 95 N. Y. 554; *Holy Trinity Church* v. *U. S.,* 143 U. S. 457; *Buffalo & L. Co.* v. *Bellevue L. & I. Co.,* 165 N. Y. 247.) The charge not having been made by Commissioner Waldo, who alone had knowledge of the facts and could alone truthfully make it, but by Fourth Deputy Commissioner Dillon, who could have had no personal knowledge of the facts stated in the charge, was ineffectual to confer jurisdiction on the first deputy commissioner to try Captain Hayes thereunder. (L. 1901, ch. 466, § 301.) The rulings of the trial deputy denying relator's objection to his trying the case and relator's motion to have the case tried before another deputy are

fatally erroneous. (L. 1907, ch. 469; *People* v. *Dohring,*
59 N. Y. 374; *Morss* v. *Morss,* 11 Barb. 510; *Brown* v.
*Brown,* 2 E. D. Smith, 153; *People* v. *Miller,* 2 Park.
Cr. Rep. 197; *Perry* v. *Weyman,* 1 Johns. 520; *Hopkins*
v. *Cabrey,* 24 Wend. 264; *Bronson* v. *Gutches,* 17 App.
Div. 204; *People ex rel McMorrow* v. *Roosevelt,* 23 App.
Div. 533; *People ex rel. Hoell* v. *Waldo,* 151 App. Div.
709; *People ex rel. McAleer* v. *French,* 119 N. Y. 502;
*Matter of Greenbaum* v. *Bingham,* 201 N. Y. 343; *People
ex rel. Clarke* v. *Roosevelt,* 168 N. Y. 488.)

*Frank L. Polk, Corporation Counsel (Terence Farley*
of counsel), for respondents. The mere fact that counsel
for the relator saw fit to subpoena the first deputy police
commissioner as a witness, although he never called him
on the trial, and without disclosing any facts showing
any basis for his disqualification, did not disqualify the
first deputy from presiding at the trial of the relator.
(*People ex rel. Meyer* v. *Roosevelt,* 23 App. Div. 514;
155 N. Y. 702; *People ex rel. Brown* v. *Grune,* 106 App.
Div. 230; 184 N. Y. 565; *People ex rel. Campbell* v.
*Partridge,* 99 App. Div. 410; 180 N. Y. 542; *People ex
rel. Egan* v. *York,* 53 App. Div. 336; *People ex rel.
Shannon* v. *Magee,* 55 App. Div. 195; *People ex rel.
Jones* v. *Sherman,* 66 App. Div. 231; 171 N. Y. 684;
*People* v. *Edmunds,* 15 Barb. 529, 531; *Perault* v.
*Hand,* 10 Hun, 222; *People ex rel. Doherty* v. *Police
Comrs.,* 84 Hun, 64; 148 N. Y. 757; *People* v. *Dohring,*
59 N. Y. 374; *Matter of Dodge Mfg. Co.,* 77 N. Y. 101;
*Matter of Newcombe,* 18 N. Y. Supp. 549; *Haydenfelt* v.
*Towns,* 27 Ala. 423; *Commonwealth* v. *Ryan,* 5 Mass. 92.)

CHASE, J. For about twenty-six years prior to August,
1912, the relator, Cornelius G. Hayes, was a member of
the police force of the city of New York. From July 7,
1911, he had been detailed as an inspector of police.
From August 30, 1911, he was in charge as inspector of
the fourth inspection district, which included that part of

the city east of Fifth avenue, between Twenty-seventh and Forty-second streets, all of that part of the city between the Hudson and East rivers, and between Forty-second and Fifty-ninth streets, and that part of the city west of Central Park between Fifty-ninth and Eighty-sixth streets. The fourth inspection district includes that part of the city commonly known as the "Tenderloin."

In an afternoon edition of one of the metropolitan newspapers on August 16, 1912, there was published what purported to be an interview with one of the inspectors of the New York police in which it was asserted that the inspector said in substance that he had been given orders by the police commissioner not to proceed against disorderly houses or obtain evidence against them. On the same day the inspectors of police in the borough of Manhattan were called before the police commissioner. After an interview between the commissioner and the relator in the presence of his fellow-inspectors and another, in which the relator was called upon to report in regard to his instructions relating to disorderly houses, and he had made a statement in regard thereto, he was told by the commissioner that his statements were absolutely false and he was thereupon and immediately reduced to the grade of captain and transferred to the ninety-ninth precinct and further suspended pending the trial of charges that the commissioner directed be made against him. A written charge against the relator was made and filed on August 26th, 1912, and is as follows:

"August 26, 1912.

"To the Police Commissioner of the City of New York:

"I hereby charge Captain Cornelius G. Hayes of the 99th Precinct with making a false official statement.

"Specifications:

"In this to wit:

"That the said Cornelius G. Hayes being an Inspector of Police and in command of the Fourth Inspection District, did make to the Police Commissioner a statement

in words to the effect that he, Cornelius G. Hayes, had been directed by the Police Commissioner not to obtain evidence against premises known as houses of prostitution, which statement was false and was known by the said Cornelius G. Hayes to be false.

"This in the office of the Police Commissioner at or about 4:45 P. M. on August 16th, 1912.

"Complainant: James E. Dillon,
                          "Fourth Deputy Commissioner.

"Witnesses:

"Police Commissioner R. Waldo,
"Inspector Cornelius F. Cahalane,
"Inspector John Daly,
"Inspector William J. Lahey,
"Inspector George F. Titus,
"Stenographer to the Commissioner Frank Donahue.
                    "JAMES E. DILLON,
                              "*Fourth Deputy Commissioner.*

"Approved

      "Aug. 19, 1912.

                "JAMES E. DILLON,
                          "*Fourth Deputy Comr.*"

A copy of the charge was served upon the relator and he pleaded not guilty thereto. His trial commenced August 30, 1912, before Douglas I. McKay, first deputy police commissioner, and lasted for several days. The relator appeared in person and by counsel. At the close of the trial the decision was reserved. Subsequently the relator was found guilty, and on September 14, 1912, he was dismissed from the police force. A writ of certiorari to review the proceeding against the relator was obtained and such writ and the return thereto were heard by the Appellate Division of the first department where the proceeding was unanimously affirmed and the writ of certiorari dismissed. An appeal has been taken from such order of dismissal to this court.

The order of the Appellate Division dismissing the writ of certiorari and unanimously affirming the proceedings before the commissioner necessarily includes a decision that there was evidence supporting or tending to sustain the finding of the commissioner that the relator is guilty of the charge made against him. (*People ex rel. Stephenson* v. *Bingham,* 205 N. Y. 168.)

It is now claimed by the appellant that the charge against the relator was insufficient as matter of law, assuming it to be true, to warrant his dismissal. This claim on the part of the appellant is first made in this court. No such claim was made at the trial, in the petition for the writ of certiorari, or in the brief of the relator in the Appellate Division.

The relator was found "guilty as charged" and we will assume that the question whether the charge is sufficient, assuming it to be true, to warrant his dismissal is a question of law for consideration in this court. The duty of members of the police force is stated in section 315 of the charter of the city of New York (L. 1901, ch. 466), and so far as material in this case is as follows:

"Section 315. It is hereby made the duty of the police department and force, at all times of day and night, and the members of such force are hereby thereunto empowered, to especially preserve the public peace, prevent crime, detect and arrest offenders * * * carefully observe and inspect all places of public amusement, all places of business having excise or other licenses to carry on any business; all houses of ill-fame or prostitution, and houses where common prostitutes resort or reside; all lottery offices, policy shops, and places where lottery tickets or lottery policies are sold or offered for sale; all gambling-houses, cock-pits, rat-pits, and public common dance houses, and to repress and restrain all unlawful and disorderly conduct or practices therein; enforce and prevent the violation of all laws and ordinances in force in said city; and for these purposes, to arrest all persons guilty

of violating any law or ordinance for the suppression or punishment of crimes or offenses."

It is also provided by section 285 of said charter that "Every member of the police force shall have issued to him, by the police department, a proper warrant of appointment * * *. Each member of the police force shall, before entering upon the duties of his office, take an oath of office and subscribe the same before any officer of the police department who is empowered to administer an oath."

The police commissioner has power, control and authority over the members of the police force. The instructions alleged to have been given by the commissioner to the relator would, if actually given by him, have shown that the commissioner was untrue to his duties as police commissioner, and to the oath that he had taken and that by such instructions he sought to coerce the relator to disobey the charter of the city and violate his personal oath as a member of the police force. An important part of the charge and specifications against the relator is that the relator's alleged statement of instructions from the police commissioner were wholly false and untrue and known by the relator to be false and untrue.

The relator falsely charged his superior officer with giving instructions which, if actually given by him, would show that he, as the head of the department, was unmindful of his duty and his official oath and consequently unfit to occupy a position of any kind in the police department. The fact that the statement was made by the relator in response to questions put to him by the commissioner does not change its effect.

The question whether such instructions had been given by the commissioner to the relator was then under consideration. The importance of determining the true relation between the commissioner and the police inspectors was very great. If there had been or was a misunder-

standing among the members of the police department in regard to some detail of the work, the good of the department required that it be honestly and truthfully discussed and that a complete understanding between the head of the department and his subordinates be reached.

The relator reported to his superior at his request, but according to the charge falsely, and with knowledge of its falsity asserted in substance that the commissioner, as the head of the department, had directed him to be false to the city and to himself. The position of the relator is that his statement is true, and, if true, his position, of course, would be entirely different. It is unnecessary at this time to consider what would have been the relator's duty to himself and to the public if the statements and instructions alleged to have been given to him by the commissioner were true. The relator has been tried and found guilty of the charge, and his guilt has been sustained by the unanimous decision of the Appellate Division. We are considering the question at this time wholly from the standpoint of the finding that the relator is guilty as charged. We have no authority to consider the question of fact. (*People ex rel. Stephenson* v. *Bingham, supra.*)

The charge is of very much more importance than a mere difference with the commissioner as to the substance and meaning of a previous conversation as is now claimed by the relator's counsel. The relator did not report to the commissioner the substance of a prior conversation as he in good faith understood it, but he reported that certain instructions were given to him that were never in fact given to him, and that he knew had never been given to him. The charge against the relator is not frivolous but very substantial. It is sufficient as matter of law, assuming it to be true, to warrant his removal.

The police commissioner is the head of the police department, and he is given the power to appoint, and

at pleasure to remove, four deputies to be known as first, second, third and fourth deputy commissioners. He is expressly authorized to "define the duties of the deputy commissioners and may delegate to either of them any of his powers except the power of making appointments and transfers." The fourth deputy commissioner made the charge against the relator, and the first deputy commissioner heard the evidence produced on the trial of such charges. The relator objected to Deputy Commissioner McKay sitting in the matter of the trial of the charges against him on the ground that he had been served with a subpœna to attend as a witness on the trial. Counsel for the relator did not say in connection with his objection to McKay that he was going to call him as a witness, but asserted that at the end of the trial McKay would be able to determine for himself whether the commissioner or the relator had told the truth.

It appears from the record that the relator claimed that in May prior to his dismissal he had a conversation with McKay, after which he went with McKay before the police commissioner, and he testified that when before the police commissioner, and in the presence of McKay, he said to the commissioner "that the deputy commissioner had called my attention to a disorderly house about 127 West 47th street; that the proprietor of the St. Francis Hotel had complained about it and I asked him if he wanted me to go after that house; he said 'No, you go up to see that hotel proprietor and let him prove it is a disorderly house. He says it is.'"

It is urged that as McKay must have had personal knowledge of what was said at the conversation narrated by the relator, he was in a position at the trial to corroborate or contradict him. The alleged statement of the commissioner is not a confession that he had instructed the relator generally not to obtain evidence against houses of prostitution. He simply told the relator in substance to go to the complainant and ask him to produce his

proof. Such instruction to the relator does not, at least as a preliminary step on the information received, show a purpose on the part of the commissioner to evade his duty or prevent the relator from performing his duty as a police inspector. The testimony of the relator quoted was not disputed by the commissioner. It seems to have been accepted as true. Whether such testimony was accepted as true or not it is not of sufficient materiality to make McKay's recollection of what was said of such importance as to disqualify him from sitting as a trial deputy or require that the order made by him be reversed. The, fact that a judge has some personal knowledge of an act or statement about which uncontradicted testimony is given upon a trial held by him should not affect the judgment rendered or order made therein particularly if the testimony received is not of substantial importance.

It does not appear simply from the fact that McKay was present at the time of the said conversation between the commissioner and the relator that he was disqualified from acting at the trial as a deputy police commissioner or as an acting police commissioner in the absence or disability of the commissioner.

The police commissioner and his deputies do not act as a board. The commissioner is the head of the department, and the deputies are his assistants and act in his behalf. The charter provides that "The police commissioner is authorized and empowered to make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department and police force and the members thereof. He shall have power and is authorized to adopt rules and regulations for the examination, hearing, investigation and determination of charges made or preferred against any member or members of the said police force * * *." (Charter City of New York, section 300.)

The charter also provides: "The police commissioner

shall have power, in his discretion, on conviction by him or
by any court or officer of competent jurisdiction, of a mem-
ber of the force of any criminal offense, or neglect of duty,
\* \* \* or any conduct injurious to the public peace or
welfare \* \* \* or conduct unbecoming an officer
\* \* \* to punish the offending party \* \* \* by dis-
missal from the force \* \* \*." (Charter City of New
York, section 302.)

"The commissioners prescribe rules for the govern-
ment of the force and by which the personal and official
conduct of its members shall be regulated. They are
empowered to punish a member who is guilty of an offense
against the rules they establish, or who is guilty of con-
duct unbecoming an officer, and the only limitations upon
their disciplinary powers is the express one that a trial
shall be had upon written charges, and upon a reasonable
notice to the accused, and the implied ones that that trial
shall be a proceeding fairly conducted; that the decision
shall be based upon evidence of the truth of the charges,
and that no immunity, or privilege, secured to the accused
by the law of the land, shall be violated." (*People ex rel.
Weston* v. *McClave*, 123 N. Y. 512, 516; *People ex rel.
Flanagan* v. *Board of Police Commissioners*, 93 N. Y.
97; *People ex rel. Doherty* v. *Police Commissioners*, 84
Hun, 64; affd. on opinion below, 148 N. Y. 757· *People
ex rel. Garvey* v. *Partridge*, 180 N. Y. 237.)

It is urged that the same person cannot decide upon the
guilt and prescribe the punishment of a member of the
police force. Neither the charter of the city nor the rules
of the police department require that in a case where the
charges are tried by a deputy the punishment must in any
event be prescribed by another person.

The relator also objects to the order dismissing him from
the department because it is signed by D. I. McKay, act-
ing police commissioner, instead of by the commissioner
himself. The order recites the history of the charges and
of the trial and continues:

"The determination of said charges being referred to the police commissioner and the same being now before the Police Commissioner: Now, Therefore, Be It Ordered, in the matter of complaint against Captain Cornelius G. Hayes of the 99th Precinct, wherein he is charged with

"MAKING A FALSE OFFICIAL STATEMENT,

"Tried before Douglass I. McKay, Esq., First Deputy Police Commissioner, on the 30th day of August and 6th, 7th and 10th days of September, 1912, upon due consideration the Acting Police Commissioner does adjudge the said Cornelius G. Hayes to be guilty of the charge and does convict him thereof, and upon such conviction adjudges and determines that he the said Captain Cornelius G. Hayes be dismissed from the police force of the Police Department of The City of New York.

"D. I. McKAY,
"*Acting Police Commissioner.*"

It is provided by section 270 of the charter of the city of New York that "The first deputy commissioner shall, during the absence or disability of the commissioner, possess all the powers and perform all the duties of the commissioner except the power of making appointments and transfers."

The power to convict and punish upon charges is vested solely in the commissioner except in his absence or disability when it devolves upon his deputies in the order of their rank. (*People ex rel. Garvey* v. *Partridge, supra.*)

The objection of the relator to the order dismissing him from the department because it is signed by the first deputy commissioner acting as police commissioner, instead of by the commissioner himself, raises several important questions.

1. Was the order made in the exercise of a judicial or semi-judicial function, or was it merely a ministerial and administrative act?

2. Can the order be reviewed by certiorari?

3. Was it necessary to show by the return to the writ of certiorari that the order was signed by the first deputy commissioner acting as police commissioner "during the absence or disability of the commissioner?"

4. Does the fact that in determining the guilt of the relator it was necessary to determine a question of veracity between the police commissioner and the relator, disable the commissioner as a matter of law from making the order for his removal?

A member of the police force cannot be dismissed from the force until written charges shall have been made or preferred against him nor until such charges have been examined, heard and investigated before the police commissioner or one of his deputies upon reasonable notice. (Charter City of New York, section 300.)

A person against whom charges are filed is entitled to appear in person and by counsel at the hearing. It is necessary at the hearing to produce witnesses whose statements are taken under oath and the accused can be sworn in his own behalf and produce testimony in addition to that given by himself in explanation or defense of the charges made against him. While the proceeding is not subject to the strict rules held in civil and criminal actions, it is nevertheless a trial and the determination of the commissioner on such trial is in the nature of a judicial or semi-judicial function. If the proceeding is judicial in its nature it can be reviewed by certiorari. The fact that the courts have uniformly entertained proceedings by certiorari to review orders of the police commissioner under the charter of the city of New York is authority for holding that the proceeding is judicial in its nature and that it is properly reviewed by a writ of certiorari.

It was held in *People ex rel. Steward* v. *R. R. Commissioners* (160 N. Y. 202) that the action of the railroad commissioners in determining that a certificate shall issue

that public convenience and necessity require the construction of a proposed railroad is the exercise of a judicial function, notwithstanding there may be closely interwoven with it certain administrative or ministerial functions that must also be exercised. The decision in the *Steward* case proceeded on the ground that the commissioners were authorized and required to take evidence and that all the parties interested were entitled to notice and a hearing. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92.)

When by statute or by implication of law the power of removal can only be exercised for cause or after a hearing the proceeding although an exercise of an administrative power is judicial in its nature and as a necessary consequence it is subject to review by certiorari. (Dillon on Municipal Corporations [5th ed.], section 488.) The question as to whether the order made in this case can be reviewed by certiorari, as has been seen, is controlled by the determination of the first question, whether the proceeding was judicial or quasi-judicial in its purpose and character.

In *People ex rel. Kennedy* v. *Brady* (166 N. Y. 44, 47) the court was examining by certiorari the determination of the department of buildings in the city of New York in removing a messenger. The statute under which the department of buildings was acting provides in substance that such removal shall not be had unless the reasons therefor be stated in writing and filed with the head of the department and the person removed has been given an opportunity to make an explanation. O'BRIEN, J., speaking for a majority of the court, said: "It seems to us that the learned court below had no power, under the circumstances of this case, to review the defendant's action in removing the relator. The writ of certiorari to review the action of public officers cannot issue except in the two cases specified in section 2120 of the Code. These cases are, *first*, where the right

to the writ is expressly conferred or authorized by a statute; and, *secondly,* where the writ issued at common law by a court of general jurisdiction and the right to it or the power to issue it has not been expressly abolished by statute. There is no statute that confers the right to the writ of certiorari for the purpose of reviewing the determination of the defendant in this case, and the relator had no right to the writ unless it issued at common law in cases of like character. Official acts, executive, legislative, administrative or ministerial in their nature or character, were never subject to review by certiorari. The writ could be issued only for the purpose of reviewing some judicial act. (*People ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1; *People ex rel. Trustees, etc.,* v. *Board of Supervisors,* 131 N. Y. 468; *People ex rel. Second Ave. R. R. Co.* v. *Board of Park Commissioners,* 97 N. Y. 37; *People ex rel. Corwin* v. *Walter,* 68 N. Y. 403; *People ex rel. Schuylerville & U. H. R. R. Co.* v. *Betts,* 55 N. Y. 600.) The sole question, therefore, is whether the official act of the defendant in removing the relator was a judicial act in nature or character. Unless it was, the court below had no power to review it upon certiorari. The relator was entitled to an opportunity to make an explanation and this he had. He was entitled to have the reasons for his removal expressed in writing and filed in the department, and this provision of the statute was complied with. He was not entitled to be sworn or to introduce witnesses with respect to the truth or merits of the reasons which were assigned for his removal. He was not entitled to a trial or a judicial hearing, and, manifestly, there was no trial or judicial hearing before the commissioner."

If the proceeding to remove the relator was not judicial in its nature then the writ of certiorari should be dismissed. (*People ex rel. R. & J. Co.* v. *Wiggins,* 199 N. Y. 382; *People ex rel. Schau* v. *McWilliams, supra.*) The writ of certiorari is not available to review the action

of a public officer or body which is merely legislative, executive or administrative although it may involve the exercise of discretion. (*People ex rel. Trustees of Jamaica* v. *Board of Supervisors, Queens Co.*, 131 N. Y. 468.)

If the proceeding was a judicial or semi-judicial one, it can be reviewed by certiorari, but as it was in a tribunal of inferior jurisdiction it was necessary that the return to the writ show that the first deputy police commissioner had authority to act in making the order. There is no presumption in favor of the authority and jurisdiction of inferior magistrates or tribunals exercising judicial functions. (*Thomas* v. *Harmon*, 122 N. Y. 84, 88.)

It would be competent for the legislature to authorize a commissioner to remove a member of the police force at will. A restricted authority expressly given would, therefore, seem to be enforceable within its terms even if it necessarily result it making the commissioner both the accuser and the judge. (*People ex rel. Jones* v. *Sherman*, 66 App. Div. 231.)

The charter of the city of New York does not make it necessary for the police commissioner to act as such when the facts and circumstances would ordinarily prevent a person from making an order in a judicial or semi-judicial proceeding. The charter of the city expressly provides, as we have already shown, that "The first deputy commissioner shall during the absence or disability of the commissioner possess all the powers and perform all the duties of commissioner except the power of making appointments and transfers."

Where it is so provided by statute and it is necessary for a person either individually or as a member of a board to act in a judicial capacity to prevent injustice and to maintain reasonable discipline in the department of which he is a member, the action of such person should be and is upheld although it results in his being both accuser and judge or of passing upon a question of fact about which he has personal knowledge. (*Matter of Ryers*, 72 N. Y.

1; *People* v. *Dohring,* 59 N. Y. 374; *People ex rel. Meyer* v. *Roosevelt,* 23 App. Div. 514; *People ex rel. Shannon* v. *Magee,* 55 App. Div. 195; *People ex rel. Miller* v. *Elmendorf,* 57 App. Div. 340.)

When it is not necessary so to act the opposite rule should and does prevail. (*People ex rel. Pond* v. *Trustees, Saratoga Springs,* 4 App. Div. 399.)

The charter of the city seems to recognize the fact that a commissioner may not only be absent but also disqualified to act, in which case the first deputy police commissioner acts as commissioner by express authority. In the absence or disability of the police commissioner the first deputy is the police commissioner and performs his duties as such.

It is a general rule that a person shall not sit as a judge in a case where he is interested. The decision of the vital point of the issue formed by the charge against the relator and his plea of not guilty upon which he was tried necessarily determined as between the commissioner and the relator which one was truthful in his testimony under oath on such trial. The commissioner's great personal interest in the result of the trial disabled him from acting as commissioner therein. It was not necessary for him to act; to prevent injustice and as he was disabled as stated it became the duty of the first deputy commissioner to act as commissioner. The authority of the first deputy police commissioner to act as commissioner affirmatively appears as shown by the record.

Under the liberal rules relating to a trial for disciplinary purposes before the head of a department none of the rulings made on the receipt or rejection of testimony in this proceeding, of which rulings the relator complains, are such as to require a reversal of the order convicting him of the charge as made. The question of prime importance in this case is the question of fact. That question was before the Appellate Division, which has power to determine the weight of testimony, and that

court, after an examination of the facts, has unanimously affirmed the order finding the relator guilty and dismissing him from the department.

The order of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, COLLIN and CUDDEBACK, JJ., concur; HOGAN, J., not voting.

Order affirmed.