THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRED W. PACKWOOD, Relator, v. JOHN J. RILEY, as Commissioner of Public Safety of the City of Amsterdam, N. Y., Respondent.

*Municipal corporations — certiorari to review proceedings removing chief of police — unfair trial.*

Certiorari issued out of the Supreme Court and attested on the 20th day of March, 1920, to review proceedings had before the respondent as commissioner of public safety of the city of Amsterdam, upon which the relator was removed from the office of chief of police of said city.

Determination confirmed, with ten dollars costs and disbursements.   All concur, except Kiley, J., dissenting, with an opinion, in which Woodward, J., concurs.

KILEY, J. (dissenting): John J. Riley, commissioner of public safety of the city of Amsterdam, this State, on the 13th day of February, 1920, after a hearing had before him, upon charges made, signed and filed by the mayor of said city against the relator as chief of police of said city, found as follows: " I do find that he has been negligent and derelict in the performance of his official duties, and has been guilty of moral delinquency seriously affecting his general character or fitness for the office or position of Chief of Police of the City of Amsterdam and as a member of the police department of said city."   Then in the same paper writing containing the foregoing continues: " I do dismiss the said Fred W. Packwood and remove him from the office of Chief of Police of the City of Amsterdam and as a member of the police department of said City."   Section 75 of the charter of the city of Amsterdam† provides, so far as pertinent here, as follows: " If a charge

---

* See Workmen's Compensation Law, § 15, subd. 7, as amd. by Laws of 1916, chap. 622, and Laws of 1917, chap. 705.— [REP.

† Laws of 1911, chap. 242, § 75.— [REP.

be made by any person against any member of the police department or fire department, that such member has been negligent or derelict in the performance of his official duties, or is incompetent to perform the same, or is guilty of some delinquency seriously affecting his general character or fitness for the office, the charge must be in writing in the form prescribed by the rules and regulations of the commissioner of public safety, and a copy thereof must be served upon the accused member. The commissioner shall then proceed to hear, try and determine the charge." The finding quoted follows the language of the statute. We must examine the evidence claimed to have sustained the charges, and the circumstances and conditions precedent, which lead up to such charges being made, the latter as bearing upon the allegation of relator that he did not have a fair trial before a fair and impartial tribunal. In *People ex rel. Shannon* v. *Magee* (55 App. Div. 195) we learn that the removal there under consideration was against the weight of evidence, while in *People ex rel. Miller* v. *Elmendorf* (51 App. Div. 173) the order of removal was reversed because the trial was not impartial and the facts showed that the individual constituting the tribunal was prejudiced against the officer removed. The history and facts are, briefly, as follows: The relator had belonged to the police force of Amsterdam about nineteen years on the 1st day of January, 1920, and had been chief of police since 1909. In 1917 David Aiken, the son of Theron Aiken, mayor and complainant in the proceedings, had trouble with the police department of the city of Amsterdam where the Aikens then lived or had lived. The evidence shows, without contradiction, that from that time on, Aiken, Sr., commenced and continued a systematic attack on relator orally and with circular and pamphlets, announcing that he would get him; in this he was supported by the commissioner, he giving out some of the pamphlets so prepared by Aiken. Raids were staged in which Messrs. Aiken and Riley were prominent and took part, connecting relator in a negative sense, by alleging the non-action of the police department. It appears that the complainant was sued upon some claim and a judgment was obtained against him upon which a body execution would issue, and he went to relator and asked him to get him $500, which he refused to do, and complainant was afterwards apprehended and confined upon such execution; complainant denies that he made such demand and question of fact was there presented for fair determination by a fair and impartial tribunal, with all of the circumstances in favor of relator's version except the said denial. Complainant made his campaign for mayor in the fall of 1919, and used as one of his arguments the alleged malfeasance in office of relator and asserted that if elected he would remove, or have removed, from office this relator. Aiken was elected and took office January 1, 1920; he appointed John J. Riley the commissioner of public safety. It is a fair inference, and the record shows nothing to the contrary, the first official act of the commissioner was toward finding some way to remove the relator. It was found at that time, January 7, 1920, that section 28 of the rules and regulations made by a former commissioner of public safety, and the one under which such proceeding must be instituted, read as follows: "Section 28. No charges preferred against

any member of the Department will be entertained by the Commissioner unless the same be presented in writing, duly signed, within thirty days from the time of the committing of the alleged offense, *unless corrupt or criminal.*" It will be noted that they, the mayor and his commissioner, could proceed at once under this section if the charges had in mind were *corrupt or criminal.* It would seem that they had nothing that was corrupt or criminal in the record of the relator to proceed upon. The only avenue left was to make a new rule, an amendment to section 28 or change it, and on the 7th day of January, 1920, for no other known purpose than to make the filing of charges and trial thereon possible, old section 28 was destroyed and new section 28 promulgated, which reads as follows: " No charges preferred against any member of the department will be entertained by the Commissioner of Public Safety unless the same be presented in writing and duly signed by the complainant." On the 13th day of January, 1920, complainant made the charges in writing and filed them, and Commissioner Riley served notice of charges and trial on that day. The charges are general, alleging delinquencies from January, 1914, to 1920, etc., but the evidence shows that only trifling and silly omissions are attempted to be proved within thirty days prior to the date of filing the charges, such as not having turned in book, or reports, and that the possession of dangerous weapons theretofore taken and theretofore had in the possession of the police department, had not been turned over to the sheriff of the county. The delegation of power by the Legislature through the charter* to the commissioner of public safety to make rules and regulations to govern the police department of the city of Amsterdam and to hear, try and determine complaints for infractions violating such rules, gives to said commissioner and such trial a quasi judicial nature, which must yield to rules of construction and procedure found best adaptable to operations under real statutes. Section 28 both before and after January 7, 1920, had the color, nature and force of a statute. If we are to view the regulation, and corrections of proceedings, and reparation of damage done by unwarranted operations under this section, in the light that it is judicial in nature and intent, and I know of no other light by which it should be viewed, then it must yield to the ofttimes·recognized and enforced rule that it is prospective only and not retroactive. (*People ex rel. Newcomb* v. *McCall,* 94 N. Y. 587; *Jacobus* v. *Colgate,* 217 id. 235.) If this view is correct, the question raised by relator at the opening of the proceedings, nothing substantial was left; no " delinquency seriously affecting his general character or fitness for the office " can be claimed from the evidence of acts done or omitted within thirty days before charges were filed. Passing that, however, what do we find as to weight of evidence? The charges are contained in fourteen paragraphs. The 1st charges that relator failed to attend all meetings of the common council and act in the capacity of sergeant at arms. The commissioner of public safety preceding Mr. Riley said he attended as often as required and was always in the same

---

* See Amsterdam City Charter (Laws of 1911, chap. 242), §§ 69, 75.—
[REP.

building and on call.  The 2d that he failed to keep a record *in a book* of all cases and legal proceedings in his department and record of services rendered by himself or other policemen chargeable to the county of Montgomery. The evidence of himself and the former commissioner of public safety shows that he rendered reports, in writing, if not in book; that he, himself, did no work chargeable to the county of Montgomery, and that the policemen rendering such services made up their bills and filed them with the proper department.  The 3d that he did not keep a book containing inventory of articles taken from persons arrested, outside of dangerous weapons; there were two such occasions and his evidence shows what he did with the articles, delivered them to the proper owners and made a list of them on paper.  The 4th that he neglected to deliver over to the sheriff weapons of different kinds, dangerous in character and taken from people arrested.  It appeared those weapons were at the police headquarters, except two which the officers had and were using, and that without his knowledge: the balance he produced before the commissioner upon this hearing.  The 5th that he did not suppress, break up and destroy all the gambling places and apparatus in the city of Amsterdam.  This was a city of between 30,000 and 40,000 inhabitants.  Relator swears that he investigated all complaints, and with the former commissioner made raids and smashed machines.  The issue made here would present one of fact.  A fair and impartial tribunal might reach the conclusion that in a city such as Amsterdam it is easier to talk reform than to actually effect reform.  The 6th, 7th, 8th, 9th, 10th and 11th paragraphs all charge neglect of duty in suppressing gambling.  These charges purport to carry the time down to December 30, 1919.  The evidence does not sustain the charges, as a whole.  The only occasions within the thirty-day limit were those inspired by complainant and his friends.  Relator may not be blameless; the question is, did he have a fair trial?  Is the weight so against him that his word that he did all he could would not be taken, at least as a plea in abatement, and mitigate the punishment to be dealt to him.  The 12th charge is that for money he was willing policemen should give protection to picnics and fairs outside of the city limits; his explanation was that short hour men were sent or permitted to go and that they received and kept the compensation; that it was nothing to him and the practice was permitted by his superior officer.  The 13th that relator, for pay, offered to furnish an applicant for examination as dairy inspector copies of the questions that would be asked of him on such examination.  This was a civil service examination.  Relator said he did not have a copy of the questions, could not get them if he wanted them; that the civil service commissioners were honorable men.  Why were not these men called and some light thrown upon the examination in question?  The 14th count, stripped of all its useless verbiage, charges relator with having committed adultery on the 22d day of April, 1918, with a woman who was not his wife, and that he did not appeal from the final decree.  The righteous indignation this charge was expected to inspire in the tribunal presided over by Commissioner Riley was founded upon the fact that, if true, it violated the Penal Law of

the State of New York,* not that it was a mortal sin and violated one of God's ten commandments. We do not in any way look lightly on a moral breach of this kind, as a violation of law either biblical or profane; but, if it be true or if the evidence under this charge has any appearance of being true, we are called upon to look at it as human not divine law. The relator says, in explanation, his wife and he were childless; that she did not want to longer live with him; that her lawyer commenced this action and produced this one witness to testify to the evidence given; they, he and his wife, must be well along in life; many things may have prompted these acts of omission; they were not acts of commission. The explanation was not called for in answer to any specific charge against him; he was charged with having committed adultery at a specified time and place; this he denied and in addition swore he was at Schenectady at that time getting parts for his automobile; no effort was made to show this statement was not true. That the evidence of adultery produced on the hearing, in a prosecution against him for committing the offense, would not justify a conviction, I do not think can be contradicted. The penalty visited upon relator was severe; reduction to the ranks might have suggested itself as more fitting under other circumstances. This is not all. In *People ex rel. Weston* v. *McClave* (123 N. Y. 512) at page 516, the court says: " They [speaking of police commissioners] are empowered to punish a member who is guilty of an offense against the rules they establish, or who is guilty of conduct unbecoming an officer, and the only limitations upon their disciplinary powers is the express one that a trial shall be had upon written charges, and upon a reasonable notice to the accused, and the implied ones *that that trial shall be a proceeding fairly conducted;* that the decision shall be based upon evidence of the truth of the charges, and that *no immunity, or privilege, secured to the accused by the law of the land, shall be violated.*" On cross-examination of Aiken, relator's counsel asked the question: " Did you at that time swear you did not reside anywhere?" The objection was sustained. He was further asked if he did not swear upon an examination that he did not know of any corrupt conduct of the relator in the performance of his official duties and if he did not answer " no." Objected to and sustained. He was further asked if he did not say on the same occasion he knew of no gambling places in the city of Amsterdam. Objection sustained. Also if he did not say he did not know of any gambling places or houses of ill fame. Objection was sustained. Relator was asked upon the stand if he did not have a talk with Commissioner Riley as to what they intended to do, and what he, Riley, said to him. Objection was sustained. The credibility and the attitude of the complainant and commissioner were proper subjects of cross-examination, especially so in view of their previous activity and known attitude. During cross-examination of a witness relator's counsel was stopped by the commissioner saying that he did not think certain duties devolved upon the corporation counsel. After some colloquy, the commissioner said: " He may go as far as he wishes. He may submit it

---

* See Penal Law, § 100 *et seq.*— [REP.

to the street sweeper if he likes." These are some of the incidents that show this trial was had under circumstances that were not likely to give the relator the full and fair protection contemplated by law and established rules of evidence. I am constrained to reject the doctrine laid down in 55 Appellate Division, 195, as not applicable to the conditions appearing in this case. I believe that *People ex rel. Miller* v. *Elmendorf* (51 App. Div. 173) more nearly accords with substantial justice and the preservation of the rights of accused persons. (*People ex rel. McMorrow* v. *Roosevelt*, 23 App. Div. 533.) *People ex rel. Tappin* v. *Cropsey* (178 App. Div. 180) is very similar as to facts and principles here involved. It was affirmed in the Court of Appeals (224 N. Y. 564). The question of the weight of the evidence is not here considered with the purpose of making a decision resting upon that ground alone; but rather to advance the suggestion that a fair and impartial tribunal could, from the evidence, reach a different conclusion than was reached in this case. The insufficiency of the evidence, its lack of weight preponderance, have, however, furnished grounds for reversal in many of these cases. (*People ex rel. Shannon* v. *Magee*, 55 App. Div. 195; *People ex rel. Eggers* v. *Bingham*, 121 id. 593.) The findings and order of the commissioner of public safety of the city of Amsterdam should be set aside and relator restored to his position with pay since his suspension and fifty dollars costs of these proceedings. Woodward, J., concurs.