THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRED W. PACKWOOD, Relator, *v.* JOHN J. RILEY, as Commissioner of Public Safety of the City of Amsterdam, N. Y., Respondent.

Third Department, November 15, 1922.

Public officers — removal of chief of police of city must be based on legal evidence — admission of newspaper clippings reversible error — mayor stated before election in pamphlet prepared by himself and present commissioner of public safety that he would remove relator — trial was mere form preceding predetermined removal and was invalid.

The removal of the chief of police of a city must be based upon legal evidence.
Accordingly, in proceedings to remove the relator, the chief of police of the city of Amsterdam, who was charged by the mayor with allowing gambling resorts to run, it was reversible error to admit in evidence before the commissioner of public safety, clippings from newspapers consisting principally of editorials.
The trial of the relator before the commissioner of public safety was, in this case, a mere form preceding a predetermined removal, for it appears that the mayor, who preferred the charges against the relator, stated publicly prior to his election that he would have the relator removed if elected, and that he would give $1,000

if he failed to remove the relator from office; that these statements were made in a pamphlet prepared by the mayor and the commissioner of public safety, the mayor's appointee and the person before whom the trial was had.

CERTIORARI ORDER granted out of the Supreme Court at the Montgomery Special Term and entered in the office of the clerk of the county of Montgomery on or about the 25th day of March, 1922, directed to John J. Riley, as commissioner of public safety of the city of Amsterdam, N. Y., commanding him to certify and return to the office of the clerk of said county all and singular his proceedings had resulting in the removal of the relator from the office of chief of police of said city and from membership in its police department.

*Andrew J. Nellis,* for the relator.

*Ambrose P. Fitz-James, Corporation Counsel,* for the respondent.

HASBROUCK, J.:

This case comes before the court on a certiorari order sued out by the relator to review the trial and findings by which he was dismissed from the office of chief of police of the city of Amsterdam by John J. Riley, commissioner of public safety.

On January 13, 1920, Theron Akin, mayor of Amsterdam, preferred certain charges against the relator. Among them is the serious charge that from January 1, 1914, to December 29, 1919, Packwood allowed " rooms and places for the purpose of conducting and carrying out therein gambling enterprises and  *  *  * he absolutely refused and failed to fulfill and carry out his duties *  *  *  and suppress such gambling operations."

There was a trial had on these charges before the commissioner of public safety in pursuance of the provisions of the Amsterdam City Charter. It provides for a service of the charges on the accused official and that " the commissioner shall then proceed to hear, try and determine the charge." (Laws of 1911, chap. 242, tit. 6, § 75.)

The statute contemplates that testimony may be adduced by the prosecutor or complainant and that evidence may be furnished by the accused officer.

There has been a former trial and removal of the relator on the charges (194 App. Div. 935). The determination of the commissioner of public safety was reversed by the Court of Appeals (232 N. Y. 283). The error of the trial court as pointed out in the opinion of Judge HOGAN of the Court of Appeals was the refusal of the commissioner to allow the complainant to answer certain questions affecting his credibility and which had regard to a proper subject of cross-examination.

Third Department, November, 1922.          [Vol. 203

The law is thus lately settled that on such hearings the accused shall not be denied the right to legal evidence. I think it follows as a reasonable inference that a judgment against the accused must be founded on legal evidence.

On the trial during the direct examination of the complainant he was asked by the corporation counsel: " Q. In 1918 from the 14th of October down to and including the 21st of October, and for a few days afterward there was a demand being made by the local papers in its news columns and editorially that the man who was then mayor of the city of Amsterdam remove the chief of police? A. Yes." Then follows the exhibition of clippings from the *Evening Recorder*, October 14, 1918, editorial entitled " Our Chief of Police; " *Evening Recorder*, October fifteenth, editorial " Mayor asks for Evidence; " *Evening Rcorder*, October sixteenth, editorial entitled " Wanted, a clean Administration; " *Evening Recorder*, October seventeenth, editorial entitled " Is this Evidence; " *Evening Recorder*, October nineteenth, editorial entitled " An itching Palm; " *Evening Recorder*, October twentieth, editorial entitled " Another affidavit; " *Evening Recorder*, October twenty-second, long editorial entitled, " Remove Packwood; " *Evening Recorder*, October twenty-third, article entitled " Tapped her on the shoulder " and another " Slot machine a menace to youth. How it flourished under Packwood." The corporation counsel then said: " We offer in evidence each and every one of these clippings which I have referred to by the name of the Article and the date." Mr. Nellis: " We object to it as incompetent, improper and irrelevant and hearsay." The commissioner: " Objection overruled." Mr. Nellis: " We except."

The " Our Chief of Police " editorial contained the following statements: " While preparations were in progress for our recent big Liberty Loan parade * * * the members of the several divisions both men and women gave notice that they would not march if the Chief was to head the procession but would hiss him in case he did so. * * *

" A few weeks ago Mrs. Packwood commenced an action for divorce.

" As long ago as 1913, Rev. Dr. Milton Butler Pratt, then pastor of our First Methodist Episcopal Church, publicly asserted that Packwood was an unfit person to be at the head of the Police Department.

" So much for facts. When it comes to rumors ' the woods are full of them.' Many people express the belief of rakeoffs from keepers of gambling resorts, houses of ill fame, etc. The little birds say that the Italian proprietor of a disreputable place

\* \* \* has been seen of a Monday morning to hand the chief \* \* \* a newspaper supposed to contain a percentage of the previous week's receipts."

The editorial "Remove Packwood" contains the following statements: "The raid on Oscar Neff's gambling place \* \* \* on Monday night by the sheriff of the county is in itself sufficient reason for the removal of Chief of Police Packwood from office. This place in the heart of the city has existed for years. Many persons outside of the gambling fraternity have known it. There can be no doubt whatever this knowledge was shared by the chief of police. \* \* \*

" Oscar Neff's is not the only gambling place in the town. There is commonly understood to be one within a stone's throw of The Recorder office. Unquestionably the chief of police knows about that too."

There is no theory upon which these clippings from the newspapers can properly be considered legal evidence. The statements made bear directly upon the charge of allowing gambling. We are unable to say that the statements contained in these newspapers did not influence the determination of the commissioner.

The introduction of statements so made on a trial where only legal evidence is permitted is such an invasion of the right of the relator that no judgment based upon it should be permitted to stand.

It seems to me that there is a vice in this trial which is more serious than the admission of hearsay evidence. The Court of Appeals has pointed it out. It says the hearing should not be " a mere form to precede a predetermined removal." The mayor said in 1919 to the voters of Amsterdam: " If I am elected Packwood must go." " I will publicly agree to give one thousand dollars \* \* \* if I fail to remove Chief of Police Packwood from office."

That statement was in a pamphlet and John J. Riley collaborated with Akin in getting it up. Not all of the pamphlets circulated for this election were jointly gotten up by Akin and Riley. It is inferable, however, that most of them were. They had been close friends for ten years. The mayor appointed Riley his commissioner of public safety and then personally preferred the charges against the relator. Here is a city administration elected on the promise to remove the relator from his office and the accuser is the promisor and the judge is the adviser, coadjutor and appointee of the accuser.

A hearing and a trial under such conditions is a farce. There is the vice in it that the Court of Appeals has already in this case

condemned. The trial was nothing but a mere form to attain the removal of the relator from office.

The situation, however, is not free from difficulty. The relator may be guilty of some or all of the charges lodged against him and may be liable to removal and if such be the case a way should be found of bringing the removal about.

We are aware that it has been held that the mere fact that a prejudiced commissioner is sometimes found is a misfortune incident to the system but does not oust him of his function. (*People ex rel. Shannon* v. *Magee*, 55 App. Div. 197; *People ex rel. Miller* v. *Elmendorf*, 57 id. 341; appeal dismissed, 168 N. Y. 675; *People ex rel. Jones* v. *Sherman*, 66 App. Div. 237.)

The law now stands that a judge who has prejudged a case — who is prejudiced — may act under such a statute as the one under consideration because of the necessity of the situation; but if the hearing accorded a relator is a mere form to precede a predetermined removal it is invalid. (*People ex rel. Packwood* v. *Riley*, 232 N. Y. 283.)

We have to deal with apparently somewhat diverging ideas as to the rule as expressed by the courts. The distinction, if it may be made, must grow out of the form of the trial. If it is only had to cover and hide the perpetration of injustice then it is bad. If it is had to honestly determine the truth of charges, but before a prejudiced commissioner, then it is valid.

What took place was a mere form; there was no real trial.

The decision should be reversed, with costs.

H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK and HINMAN, JJ., concur.

Determination annulled, with fifty dollars costs and disbursements, and new hearing granted.