In the Matter of the Application of John Cruise, Jr., for a Certiorari Order against The Commission of Public Safety of the City of Hudson, N. Y.

Third Department, March 7, 1923.

Municipal corporations — certiorari to review action of commission of public safety of city of Hudson in removing chief of police — commission has full control of police department under charter (Laws of 1921, chap. 669) — evidence sustains charges of neglect of duty, etc.— no evidence of bias on part of commission or members thereof.

The commission of public safety of the city of Hudson has, under the city charter (Laws of 1921, chap. 669), full control of the police department, and upon it rests full responsibility to see that the affairs of the city in this respect are properly conducted and that the police power is efficiently exercised.

The evidence presented before the commission of public safety on charges against the chief of police of the city of Hudson fully sustains the charges of neglect of duty, incompetency, conduct subversive of good order and discipline of the force and violation of rules.

There is nothing in the record to support the claim of the relator that the commission, or any of its members, was biased.

Certiorari order granted out of the Supreme Court at the Rensselaer Special Term and entered in the office of the clerk of the county of Columbia on the 27th day of July, 1922, directed to the commission of public safety of the city of Hudson, N. Y., commanding said commission to certify and return to the office of the clerk of the county of Columbia all and singular its proceedings had in connection with the removal of the petitioner from the office of chief of police of the city of Hudson.

*John J. Moy* [*R. Monell Herzberg* of counsel], for the petitioner.

*William J. DeLamater*, for the respondent.

Van Kirk, J.:

The commission of public safety of the city of Hudson (which we shall herein call the commission) consists of three members, appointed by the mayor. Members of this commission are public officers. (Laws of 1921, chap. 669, §§ 6, 28, 260, entitled " An Act to revise the charter of the city of Hudson.") The commission has power to appoint policemen and to remove for cause at any time any policeman; it may also suspend temporarily from duty or pay, or both, any officer or member of the police force, " for cause to be assigned in writing " (Hudson City Charter, §§ 28, 265, 267); it must make rules and regulations for the government and discipline of the police department and may impose upon and collect from the

members such reasonable fines and penalties for infractions of duty as it may deem proper (Id. § 264); it shall regulate and control the police of the city (Id. § 267). Section 269 of the charter provides the duties of the chief of police: " It shall be the duty of the chief of police, under the direction of the commission, to superintend the police department of said city. He shall keep a record in suitable books of all arrests and all services performed by him and the several policemen. He shall also keep books to be known as the ' property books ' in which shall be entered all articles taken from persons arrested, or seized on warrant or otherwise, together with the disposition made thereof. It shall be the duty of the sergeant of police under the direction of the chief of police and the commission, to perform any services and exercise any control within the duty or authority of the chief of police in the management and operation of the department." The policemen and officers in office when the charter took effect were continued under the control of the commission until their successors were appointed, "subject to removal for cause at any time by the commission." (Hudson City Charter, § 262.) Thus the commission has full control of the police department and upon it rests full responsibility to see that the affairs of the city in this respect are properly conducted and that the police power is efficiently exercised for the good of the city and its citizens, including proper enforcement of the criminal and penal laws.

The relator had been upon the police force in the city of Hudson continuously since 1889. A part of this time he served as sergeant and in December, 1917, he was appointed chief of police, in which office he was serving at the time the charges herein were presented against him.

The commission was appointed, under the aforesaid act of 1921, in June, 1921. In September following the relator was asked to resign for the good of the city. Again on March 9, 1922, he was called before the commission and told that he should resign. He refused and in April, 1922, charges were preferred against him. These charges are grouped under heads: *First,* neglect of duty; *second,* incompetency; *third,* conduct subversive of good order and discipline of the force; *fourth,* conduct unbecoming an officer and gentleman; *fifth,* violation of rules. Under each of these general heads specific charges are set forth. The record in this case covers over 600 pages; the examination of witnesses occupying over 550 pages. It will be unnecessary to go through in detail the charges and the evidence. While the commission has exonerated the relator as to some of the specific charges, they have sustained specific material charges under each one of the general heads and found against the relator on each one of the general charges. The

evidence in the record fully sustains the charges of neglect of duty, incompetency and conduct subversive of good order and discipline of the force and violation of rules and justifies the conclusions reached.

We find nothing in the record to support the claim of the relator that the commission, or any of its members, was biased. An examination of it discloses that these men acted in good faith and from a conviction that, for the good of the city and its police force, another than the relator should be the chief of police. He was informed of the charges. He claims that he was denied a bill of particulars, but the charges are definite and specific and the evidence offered against him applied directly to the charges as preferred against him; there was no just ground for granting a bill of particulars. He was given a fair and extended trial, with full opportunity with counsel to be heard and to present all the evidence he desired to present in his behalf. The whole tone of the proceeding was moderate and considerate of the rights of the relator. The commission evidently made a careful examination of the record before it made its findings. There is nothing to indicate that they were influenced by any information or impressions which as individuals they had or entertained apart from the information acquired at these hearings. The commission is made up of men who, as required by section 9 of the charter, are citizens and electors of the city. Naturally they have information of how the city affairs are being conducted; but the charter puts upon them the sole responsibility for the control and management of the police department, for its standing in the public eye and its efficiency; upon it alone is the duty fixed to remove or demote a member of the police force when the good of the service requires. In *People ex rel. Hayes* v. *Waldo* (212 N. Y. 156, 172) the Court of Appeals said: " Where it is so provided by statute and it is necessary for a person either individually or as a member of a board to act in a judicial capacity to prevent injustice and to maintain reasonable discipline in the department of which he is a member, the action of such person should be and is upheld although it results in his being both accuser and judge or of passing upon a question of fact about which he has personal knowledge." The words of Chief Judge RUGER (*People ex rel. Masterson* v. *French,* 110 N. Y. 494, 499) express that which should be said here: " The government of a police force assimilates to that required in the control of a military body, and the interference of an extraneous power in its practical control and direction, must always be mischievous and destructive of the discipline and habits of obedience, which should govern its subordinate members. If its determi-

nations upon all questions are subject to review, and appeals to some tribunal outside the force may be taken without restraint, it must necessarily lead to a want of respect towards their official superiors, and an impairment of the habits of obedience and discipline which are so essential to the efficiency and good conduct of a well regulated police force."

The commission, while its decision may be humiliating, has not disgraced the relator. He was not dismissed from the force, but on the other hand the commission, having determined, as the record justified, that he was not fit, equipped and qualified for the position, has reduced him from the chief to sergeant, the second place in the department. The difference in salary of the two positions is not a matter of serious moment. In the decision of the commission there is no indication of prejudice or passion or ill will — rather the opposite. In this record it appears that the members of the commission have performed their duty as faithful public officers.

We find no similarity between this case and *People ex rel. Packwood* v. *Riley* (194 App. Div. 935; revd., 232 N. Y. 283).

The determination of the commission of public safety of the city of Hudson should be affirmed, with fifty dollars costs and disbursements.

H. T. KELLOGG, Acting P. J., HINMAN and HASBROUCK, JJ., concur; KILEY, J., concurs in the result.

Determination unanimously confirmed, with fifty dollars costs and disbursements.