THE PEOPLE OF THE STATE OF NEW YORK ex rel. STEPHEN LIBERTY, Relator, *v.* HARRY M. COOKE, as Acting Mayor, MICHAEL O'CONNELL and FRANK BOURDEAU, as Police Committee of the City of Plattsburgh, N. Y., Respondents.

Third Department, June 30, 1919.

**Municipal corporations — certiorari — review of proceedings resulting in suspension of member of police force of city of Plattsburgh — jurisdiction.**

Upon certiorari to review proceedings resulting in suspending a member of the police force of the city of Plattsburgh, it appeared that the relator, after quieting a disturbance caused by a person who was then drunk and disorderly, failed to make an arrest and permitted such person, who was in need of medical attention, to remain with a friend, and that nearly a week afterward an arrest was made.

*Held,* that under the circumstances an order suspending the relator should be set aside and his reinstatement ordered.

*Quære* as to jurisdiction to try charges against a member of the police force of the city of Plattsburgh where the mayor thought he was " disqualified from acting " and that he might be called as a witness.

H. T. KELLOGG, J., dissented.

CERTIORARI issued out of the Supreme Court and attested on the 7th day of August, 1918, directed to Harry M. Cooke, as acting mayor, and others, commanding them to certify and return to the office of the clerk of the county of Clinton all and singular their proceedings had in suspending the relator from office as a civil service patrolman for the period of one year.

*John E. Judge,* for the relator.

*H. E. Barnard, Corporation Counsel [Egbert C. Everest* of counsel], for the respondents.

WOODWARD, J.:

The charter of the city of Plattsburgh provides that the common council " shall choose one of the aldermen to be temporary president, who shall during such official year, be the presiding officer of the common council in the absence of the mayor, and while the mayor is absent from the city or

Third Department, June, 1919.          [Vol. 188.

unable to perform his duties said presiding officer shall be acting mayor and have all the powers and duties and be subject to all the obligations and liabilities of the mayor." (Laws of 1902, chap. 269, § 36, as amd. by Laws of 1914, chap. 341.) Where any charges are made against any member of the police force, " the charge must be put in writing " and " a copy thereof must be served on the accused officer and filed with the mayor, and it shall be the duty of the mayor to hear, try and determine the charge," etc. (Id. § 85, as amd. by Laws of 1903, chap. 449.)

The relator was a member of the police force of Plattsburgh, and was charged in writing with having been derelict in his duty upon a particular occasion on the 9th day of April, 1918, in that he failed to make an arrest of one Frank Murphy, who was at the time engaged in the disturbance of the peace. The undisputed facts appear to be that Murphy was drunk and disorderly; that he had had a fight with a young man, in which he appears to have suffered somewhat, and that he subsequently sought for the young man at the place of business of the father, entertaining himself, while waiting, by throwing pool balls through the windows, etc. The relator was called in and appears to have quieted the disturbance, and then to have permitted Murphy, who was bleeding badly and apparently in need of medical attention, to remain with a friend, who undertook to provide the medical care. Subsequently, and nearly a week afterward, a warrant was sworn out by the chief of police, and Murphy was arrested and on pleading guilty was fined fifteen dollars. In the meantime the chief of police preferred charges against the relator, and this proceeding is brought to review the trial.

There can be no reasonable doubt, from the return, that the police committee of the common council of Plattsburgh, of which Harry M. Cooke, the acting mayor, was chairman, assumed to have jurisdiction of the charges against the relator. They met and continued to go through the forms of a trial until it was made to appear that the mayor was the only person authorized by the statute to entertain jurisdiction, and then, upon return to the writ, it appears that the theory was developed that as the mayor was informed by one of the parties that he would be called upon to become a witness in

the proceeding he could not act, and thereupon Harry M. Cooke became the acting mayor, and that he alone conducted the trial while the two other members of the police committee merely sat with him for the purpose of getting general enlightenment as to their duties and responsibilities. That this was all an afterthought is so obvious that it does not appear necessary to go into the discussion of the record.

But, assuming that the proceeding was in good faith, and that the two members of the police committee sat without authority in law for the purpose alleged, we are still of the opinion that there was no jurisdiction in the tribunal to hear these charges for the reason that the record does not show that Charles A. Barnard was " absent from the city or unable to perform his duties " as mayor, and without this fact appearing there could be no authority on the part of the acting mayor to undertake this trial. There is no presumption in favor of the authority and jurisdiction of inferior magistrates or tribunals exercising judicial functions (*People ex rel. Hayes* v. *Waldo,* 212 N. Y. 156, 172, and authority there cited), and the affidavit of Mr. Cooke, on the return to the writ, that " I understood the said attorney, John E. Judge, for said Liberty, said to Mayor Charles A. Barnard of said city, that he should require and use the said mayor as a witness in behalf of said Liberty on the trial of said charge against the said Liberty," does not meet the requirement. Nor is it helped by the further declaration in the same affidavit that " Whereupon said Mayor Barnard informed me that I would have to act upon and hear said charge as mayor of said city, as he was disqualified from acting as he was to be called as a witness for said Liberty."

The language of the statute is that the mayor " is absent from the city or unable to perform his duties," and it is not pretended that the mayor was out of the city, or that he was " unable to perform his duties," and no such fact appears in the record. The fact that Mayor Barnard thought he was " disqualified from acting," which fact does not appear in the record of the proceedings before the tribunal, is not sufficient to bring into being the powers vested in the acting mayor; the mayor must be out of the city or " unable to perform his

duties," which obviously means that there must be some
reason why he may not discharge the duties of mayor. It
may be that being " unable to perform his duties " is not
to be restricted to a physical inability, as suggested by the
court in *People ex rel. Lanzandoen* v. *Schirmer* (55 Hun, 160,
162), but may be understood to extend to a duty of paramount
importance, such as sickness in his family or other contributing
causes, which prevents his attention to the official duty, but
the mere fact that the mayor may be called to testify to a fact
in favor of the person tried is not such an inability as the statute
contemplates. " The fact that a judge has some personal
knowledge of an act or statement about which uncontradicted
testimony is given upon a trial held by him should not affect
the judgment rendered or order made therein, particularly if
the testimony received is not of substantial importance,"
say the court in *People ex rel. Hayes* v. *Waldo* (212 N. Y. 156,
166), and as the only matter involved within the personal
knowledge of Mayor Barnard was the fact that the relator
met him on the street immediately after the disturbance was
over, and told him what had occurred, if the mayor had dis-
charged his statutory duty and heard these charges there was
no reason for calling him as a witness; he would have con-
sidered the testimony in the light of his own knowledge just
as every juror does, and while it is improper for one juror to
use his special knowledge going to the credibility of witnesses,
where such fact is not brought out in evidence, he must, in the
very nature of his duties, weigh the evidence in the light of
his own knowledge of facts. (*Jenney Electric Co.* v. *Branham,*
145 Ind. 314.) But the law is well established that a juror
may be a witness upon a trial before himself and his fellows,
first being sworn as a witness, besides his oath as a juror.
" But where the judge, who is called to the witness box, is
actually trying the cause, and his continuance in action as
judge is necessary to the seemly and proper trial of the cause,
then he may not become a witness; it is error so to do, and if
objection be made, and exception taken, it is fatal error."
(*People* v. *Dohring,* 59 N. Y. 374, 378.)

It will be observed, from the discussion in the case cited,
that the objection goes to the disqualification of the witness,
not to the denial of jurisdiction and authority to the judge.

Whatever of objection there might have been to Mr. Barnard becoming a witness in a trial before himself, this did not operate to deprive him of the duty or obligation of discharging the duties of mayor so long as he was in the city and in a position to do so, and it may well be doubted if the considerations of public policy which make it improper for a judge to become a witness in a trial which he is conducting reach to quasi-judicial proceedings of a disciplinary character, such as is here involved, particularly where the mayor was not the accusing party and his testimony was desired in behalf of the accused. He was not interested in the controversy in " a disqualifying sense " (*People ex rel. Eagan* v. *York*, 53 App. Div. 336, 339), and he was not, therefore, " unable to perform his duties." There being no reason, in law or fact, why the mayor could not perform his duties as mayor; it appearing clearly that at most he was merely disqualified from testifying upon a matter of only the most incidental importance, it follows that the ground for accepting jurisdiction on the part of the acting mayor does not appear, and the determination, being without jurisdiction, is a nullity. (*O'Donoghue* v. *Boies*, 159 N. Y. 87, 98, 99.)

There is no dispute that the police committee, which in fact assumed to act, was without jurisdiction. It is equally clear that the acting mayor was without jurisdiction or authority in the premises, and the order suspending the relator should be set aside, and the relator should be reinstated to his position, with fifty dollars costs and disbursements.

All concurred, JOHN M. KELLOGG, P. J., in result in memorandum in which COCHRANE, J., concurred, except H. T. KELLOGG, J., dissenting.

JOHN M. KELLOGG, P. J. (concurring in the result):

I think the mayor was unable to perform the duties of his office in trying the relator. He was a necessary witness and so far an actor in the matter that he could not act judicially. The investigation, therefore, should have been before the acting mayor. The proceeding was, in effect, heard by the police committee, and the members of the committee took part in the decision; after the trial and agreement upon a

decision, the acting mayor could not assume to make the decision as acting mayor when in fact the proceeding was conducted by the committee. The action under review is arbitrary and unreasonable. The officer at once reported the facts to the mayor when it was easy to arrest Murphy, and the mayor seemed to think it was a little too late but felt that it would have been better if he had been arrested on the spot. The man was wounded and bleeding, and the officer's version that he needed a physician first was humane and proper. I think the officer reasonably performed his duties under the circumstances as they seemed to him. I, therefore, concur in the result.

COCHRANE, J., concurred.

Determination annulled and relator reinstated, with fifty dollars costs and disbursements.