THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LILLIAN F. HARTNETT and Others, Appellants.

County Court, Erie County, February 12, 1925.

Crimes — petit larceny — prosecution of defendants before justice of peace — error to admit testimony of unsworn witnesses on behalf of People — error for justice of peace to suspend trial and visit scene of crime — error for justice of peace to state in return that defendants were given opportunity to prove innocence — judgment of conviction reversed.

A judgment of the Court of Special Sessions convicting the defendants of the crime of petit larceny should be reversed where it appears that the defendants were brought to trial immediately after their arrest and were confronted with the unsworn testimony of two witnesses for the People, since the reception of the unsworn testimony was reversible error that was not waived by the defendants, who were forced to trial without the opportunity to consult counsel.

Moreover, it was a fatal error for the trial justice to suspend the trial to visit what he supposed was the scene of the crime, since his action was a denial of the constitutional rights of the defendants to appear and defend in person during a part of the trial, and was also a denial of their statutory rights to be confronted with the witnesses.

It was also reversible error for the justice of the peace to state in his return that the defendants had been given an opportunity to show that they had not stolen the property, since the defendants were not required to prove their innocence.

APPEAL from a judgment of conviction in a Court of Special Sessions in the town of West Seneca, New York.

*John V. Maloney,* for the appellants.

*Guy B. Moore, District Attorney* [*William H. Hartzberg, Assistant District Attorney,* of counsel], for the respondent.

NOONAN, J.:

The appellants, Lillian F. Hartnett and Frances Conners, are police officers in the city of Buffalo. On the evening of June 25, 1924, they went to the town of West Seneca in search of a girl, for whose arrest Mrs. Conners had a warrant. The defendant William H. Slack took them out in his automobile, and the defendant Alice Rasp went along for pleasure.

On the way home Miss Rasp became ill and Miss Hartnett accompanied her into a nearby field. They returned to the automobile and resumed the journey home. The complainant, Pesting, said that he saw the women who had been in the field bring onions into the automobile. He started in his automobile to meet them, but they got by him. He turned and pursued them into the city of Buffalo. At the city line he got a police officer of the town of West Seneca to join in the pursuit, and all of the defendants were arrested in the city of Buffalo by *said police officer* for a crime *not* committed in his presence.

All the defendants were forthwith taken before a justice of the peace. Informations were sworn to by said Pesting, and they were all tried together. Pesting was then put on the stand, but *not* sworn. After hearing his statement the judge suspended the trial and looked over the alleged scene of the alleged crime, and came back and resumed the trial. One witness for the People was sworn and gave testimony. The West Seneca police officer was not sworn, and made a statement. None of the defendants were sworn, but they all denied stealing any onions. The defendants were all found guilty and fined five dollars each. From the judgment of conviction each defendant has appealed. A return on the appeals has been made only in the case of defendant Hartnett, with an understanding that this return be deemed the record in all the cases, since they were tried together and the evidence is the same in all the cases.

Several reasons are urged for a reversal of the judgment of conviction, but it will be necessary to consider only two of them: (1) That some of the witnesses for the People were not sworn; and (2) that the action of the trial justice in suspending the trial in order to visit the alleged scene of the alleged crime was unlawful and highly prejudicial to the rights of each defendant.

The rights of a defendant on trial for a penal offense are jealously guarded both by the Constitution and by statute. Article 1, section 6, of the Constitution of the State of New York provides that " in any trial in any court whatever, the party accused shall be allowed to appear and defend in person and with counsel, as in civil actions " and no person shall " be deprived of life, liberty or property without due process of law." Section 8 of the Code of Criminal Procedure provides as follows: " In a criminal action the defendant is entitled (1) To a speedy and public trial; (2) to be allowed counsel as in civil actions, or he may appear and defend in person and with counsel; and (3) to produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court," with certain exceptions not applicable to

this case. Section 195 provides that "The witnesses must be examined in the presence of the defendant, and may be cross-examined in his behalf." Section 392 provides that "The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in this Code. * * *," and the "mode of swearing witnesses" is prescribed in sections 360 to 365 of the Civil Practice Act.

Although it has been held that "The law requires the testimony of witnesses to be given under the sanctity of an oath" (*People v. Frindel*, 58 Hun, 482), I cannot find any statute commanding it, but the practice is universal and supported by statutes prescribing the "mode of swearing" and punishment for perjury. It is a part of our judicial system by inheritance, and a method of procedure having the sanction of settled usage is commonly regarded as due process. (*Waters & Co. v. Gerard*, 189 N. Y. 302; *Bookman v. City of New York*, 200 id. 53.)

Our courts have always upheld the practice of requiring witnesses to be sworn before testifying. "There must, at least, be some legal responsibility for perjury, or some protection to the accused against falsehood." (*People ex rel. Kasschau v. Police Comrs.*, 155 N. Y. 40, 44.)

"Before a witness is allowed to give his testimony he must be sworn to tell the truth." (40 Cyc. 2410, and cases cited.) "Before a witness is examined he should be sworn by the proper officer of the court, and if a witness testifies without being sworn, and the irregularity is not discovered until after verdict, the verdict will be set aside." (30 Am. & Eng. Ency. of Law, 910, and cases cited.)

As the defendants were not represented by counsel, they would not be expected to know about the irregularity nor take an exception thereto, and would not be deemed to have waived it. "In the absence of evidence satisfactorily showing a waiver the testimony, upon which an adjudication in either a civil or criminal case is made, must be under oath." (*People v. Fisher*, 182 App. Div. 301, 305; *People ex rel. Menzie v. Davis*, 189 id. 391, 394; *People ex rel. Kasschau v. Police Comrs.*, *supra.*) The failure to swear two of the witnesses for the People is reversible error that was not waived.

It was also a fatal error for the trial justice to visit what he supposed was the scene of the crime. By so doing he became a witness in the trial before himself. This question was first considered in this State in *Morss v. Morss* (11 Barb. 510) and, after a painstaking review of the authorities, the court held that a justice cannot be a witness in a trial before himself. This has been the settled law of the State ever since. (*People v. Dohring*, 59 N. Y. 374, 378; *People ex rel. Liberty v. Cooke*, 188 App. Div. 351, 354.)

" The view of the place was itself evidence." (*People* v. *Palmer*, 43 Hun, 397, 401; affd., 109 N. Y. 413.) Thus by viewing the place the justice became a witness in the cases on trial before him. None of the defendants knew what the justice had done. In the return of the justice is the following: " After some talk about onions scattered along the road, I then put Mr. Pesting on the stand and heard his story. I then left court in charge of Officer McArtney and put on my hat and walked down to the corner of Seneca street and Lind avenue, walked in Seneca street toward Buffalo for a distance of about five hundred feet; there I saw onions strewn along the road as far as I could see, which point was the Terminal Railroad Bridge. I then came back east, went to the garden patch, there saw where the onions had been ripped out; also saw that the spot where the onions had been ripped out there were marks of a woman's shoe. I then came back and reopened court." The failure to object to something unknown to them cannot be construed as a waiver of any rights on appeal. The burden of making out a case was upon the prosecution. (*People ex rel. Kasschau* v. *Police Comrs., supra.*)

This action of the trial justice was a denial of the constitutional rights of the defendants " to appear and defend in person " during a part of the trial. The right of a party to be present at every part of the trial is absolute. (*Chandler* v. *Avery*, 47 Hun, 9.) They were also deprived of their statutory rights " to be confronted with the witnesses; " to have the witnesses examined in their presence, and the opportunity for cross-examination.

That said action of the justice was highly prejudicial to the rights of the defendants is shown by the following paragraph in his return: " That the justice was not disqualified because of the fact of looking over the ground where the crime was committed, and which act did not make him prejudiced against the defendant, *but did confirm the testimony* of the person laying the information."

Furthermore the road over which the justice walked is one very much used by farmers to go to market. There was a sufficient lapse of time between the alleged theft of the onions and the view of the premises to allow other persons to scatter onions along the highway, and there is no proof to show that the shoes worn by any of the defendants in any way fitted the " marks of a woman's shoe " that the justice saw in the field.

There is another reversible error. In his return the justice says: " That the defendant is guilty of petit larceny * * * and that the defendant was given the opportunity to show that she had *not* stolen any onions." The defendants were not required to prove their innocence. They were presumed to be innocent

until the contrary was proven. (Code Crim. Proc. § 389.) The burden of proving a defendant guilty is always upon the prosecution, and it never shifts.

For the reasons above assigned the judgment of conviction in the case of each defendant must be reversed, and orders may be entered accordingly.