GEORGE CHAMBERS, Executor of Andries Schoonmaker, *v.*
CHARLES H. CLEARWATER *et al.*

Where an action is brought by two persons, who are partners, to collect a
partnership debt, and both are active in obtaining the judgment, although
one of them, alone, gives the directions to the officer for seizing the property
of the defendant, upon the execution, he should be presumed, in the absence
of evidence to the contrary, to have been acting in conjunction with his
co-plaintiff in a common enterprise of collecting their joint debt by a seizure
of the debtor's property.

The direction to levy an execution upon a particular piece of property is an
incident to the obtaining payment of the debt by legal process; and when
one of two partners is found acting in that business, the presumption is, that
he had the countenance and assent of the other partner.

A judgment, attempted to be rendered by a judge, who is disqualified by reason
of consanguinity with one of the parties, is void in the most extreme sense
known to the law, and therefore is utterly incapable of being made good by
any omission, waiver, or express consent.

APPEAL from a judgment of the Supreme Court. The
action was in the nature of trover for two horses, a wagon,
harness, etc. One Andrew Roosa was the former owner of
the property, and he mortgaged it to Schoonmaker, the
original plaintiff, in December, 1851, to secure a debt of
$175, payable September 1st, 1852. By the terms of the
instrument, the mortgagee had a right to take possession
of the property, and sell the same, if at any time he should
deem himself insecure.

The defendants, on the 23d June, 1852, recovered a judg-
ment against Roosa for $82.22, before James H. Elmendorf,
a justice of the peace of Marbletown. The suit was com-
menced by the personal service of a summons, was tried by
the justice without a jury after an adjournment, the parties
appearing and consenting to such adjournment. The property
was seized and sold by virtue of an execution issued on this
judgment, at the instance of one of the defendants in this
suit, they being plaintiffs in the action before the justice.
They were partners as retail merchants, and the indebtedness
of Roosa, for which the judgment was recovered, was for
goods purchased by him from their store. The clerk of the
firm was a witness on the trial of the suit against Roosa.

It was proved on the trial of the present case that Silas Wood, one of the defendants, and a plaintiff in the action against Roosa, was a first cousin of Elmendorf, the justice. Elmendorf, who was a witness, also swore that he had been told that Clearwater, the other defendant, and the other plaintiff in the justice's court, was his second cousin, their fathers being, as he had been told, first cousins.

The mortgaged property remained in the possession of Roosa, the mortgagor, till it was seized on the execution.

The defendant's counsel moved for the discharge of Wood, who was not shown to have personally directed the seizure, · the direction for that purpose having been given by the defendant Clearwater; but the motion was overruled. The defendants then moved for a nonsuit, which was in like manner overruled.

The defendants then gave some evidence, tending in some slight degree to impeach the *bona fides* of part of the mortgage debt, and offered evidence of the tender of the residue of that debt by the present defendants, but the evidence was excluded.

The judge then directed a verdict for the plaintiff, which was accordingly given. The defendants' counsel excepted to the several rulings against them.

After an affirmance of the judgment at a General Term, (see 41 Barb., 200), the defendants brought this appeal.

*J. Hardenburgh,* for the plaintiff.

*T. R. Westbrook,* for the defendants.

DENIO, Ch. J. I am of opinion that the evidence was sufficient to make out a *prima facie* case against both the defendants, so far as related to the question of the seizure of the property. The defendants were both active in obtaining the judgment against Roosa, and although Clearwater alone gave the directions for seizing the horses and wagon, he should be presumed, in the absence of evidence to the contrary, to have been acting in conjunction with the other defendant in a common enterprise of collecting their joint debt by a seizure of

the property in question. Although the commission of a trespass was not within the scope of the partnership enterprise, the collection of the joint debt was a part of that business. The direction to levy the execution upon a particular subject was an incident to the obtaining payment of the debt by legal process, and when one of the partners was found acting in that undertaking, the presumption is that he had the countenance and assent of the other partner.

The plaintiff's mortgage being the earlier title, would have enabled the plaintiff to recover, unless it was shown to be fraudulent. There was no evidence of fraud except the releasing of possession by the mortgagor, but the evidence offered and excluded would have had a tendency in that direction, and should have been received if the defendants were in a position to justify, as judgment creditors of Roosa. This brings up the question principally argued, whether the justice's judgment was void on account of the relationship between the justice and plaintiffs in the action in which it was recovered. If it was erroneous merely, and not wholly void, it would clothe the defendants with the character of judgment creditors of Roosa, and enable them to contest the *bona fides* of the plaintiff's mortgage; but if it was void, the defendants would be only creditors at large, and the mortgage lien valid between the parties, the defendants would be trespassers in seizing the property.

The statute declares that "no judge of any court can sit as such in any case in which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties." (2 R. S., 275, § 2.)

It is not denied but that a juror who was first cousin to one of the parties, would be excluded by reason of consanguinity, nor but that Justice Elmendorf erred in sitting as a judge in the action between the defendants and Roosa.

Arguments have been drawn from the strong language employed by the legislature, which in terms positively forbids a judge, in the position which Elmendorf occupied, from *sitting as such;* from which it is reasonably argued that

where he attempts to do so he is not to be regarded as possessing a judicial character, but being only a private individual, and that the proceedings are to be considered *coram non judice.* On the other side are the adduced cases of judicial acts contrary to positive law, which are yet held to be valid when produced for a collateral purpose, and impeachable only by a direct proceeding, in which they are subjected to a review.

It may be conceded that, if there were no more direct authority, the present question might involve some doubt. I am of opinion that it has been settled by authority which we are bound to follow.

In *Oakley* v. *Aspinwall* (3 Comst., 547), one of the then judges of this court was bound to have taken part in the decision of that case though he was distantly related to one of the defendants. The case was decided by the concurring vote of five judges, of whom he was one. The party to whom he was thus related was shown to have no real interest, being fully indemnified by the actual parties in interest to the litigation. He sat in the case at the request of the other party, who afterward questioned the judgment on the ground that he had done so. On a motion to vacate the judgment and the *remittitur* on that ground, the court held that the judgment was not simply erroneous, but utterly void. It was not denied but that the consent would have cured the error, if there had been jurisdiction; in other words, if it were only error; but it was considered that it was void in the most absolute sense which can be expressed by that term. In the leading opinion, prepared by Judge HURLBUT, it was said : " The exclusion wrought by it [the statute] is as complete as in the nature of the case is possible. The judge is removed from the cause and from the bench; or if he will occupy the latter it must be only as an idle spectator and not as a judge. He cannot sit as such. The spirit and the language of the law are against it."

It is argued that the occasion upon which this decision was made was not one in which the judgment was sought to be availed of collaterally, as in the present case, but that it

partook rather of the nature of a review; and that is true. But the situation of. the question was the same. If any judgment in which the disqualified judge took part could possibly be valid for any purpose that judgment could have been sustained. The consent which induced and procured the judge to sit would have made the judgment perfectly valid if, under any possible circumstances, it could be made valid. Mr. BROOM, in commenting on the maxim, " *Cenlexus tollit erronem*," says, " The maxim is essential to distinguish a proceeding which is merely irregular from one which is completely defective and void. In the latter case the pro‑ ceeding is a nullity and cannot be waived by any laches or subsequent proceeding of the opposite party." The reason, upon which judgments palpably illegal and erroneous will yet furnish a justification to parties executing process under them and will be held valid in all collateral proceedings, is that the party affected by them has waived his rights. The waiver, in most cases of this kind, is tacit, and consists in an omission to appeal or bring a writ of error. The defendant is, therefore, held to have consented that the judgment may stand. But if, when he expressly consents, by his counsel, in the most formal and authentic manner, and yet it is not held valid, the matter must be one in which no consent will avail. It must, in short, be void; and this court must be held to have determined, in the case referred to, that a judg‑ ment attempted to be rendered by a judge, who is disqualified by reason of consanguinity with one of the parties, is void in the most extreme sense known to the law, and, therefore, entirely incapable of being made ogod by any omission, waiver, or express. consent. I think this is so, upon principle as well as authority. If one, who has no just pretense of possessing the character of a judge, should summon a party before him at the instance of another, and assume to render a judgment between the parties, no one would insist that it would be valid for any purpose. It would, of course, be utterly void, and would furnish no justification to any one. If it be true, as I think it is, and as the judge who sat on the motion in *Oakley* v. *Aspinwall* decided that one prohib‑

ited by the statute from sitting as a judge, is to be regarded as not being a judge at all, nor entitled to occupy the bench under any circumstances, except as a spectator; it is the same thing as though he had never been raised to the judicial office. His being entitled to sit as a judge in cases to which the disqualification did not apply would not aid him in any degree in cases to which the disqualification attached.

Chief Judge BRONSON dissented from the order made in *Oakley* v. *Aspinwall*; and it generally detracts somewhat from the confidence we feel in a judgment, that it failed to secure the approval of that eminent and accurate judicial officer. But his dissent was placed in some degree, if not entirely, upon the distinction between a court of superior and one of inferior jurisdiction. I do not understand him to have questioned the correctness of the cases of *Edwards* v. *Russell* (21 Wend., 63), or *Root* v. *Morgan* (1 Hill, 654). In the first of these cases it was declared by the court, and in the other it was expressly adjudged, that a judgment rendered under the circumstances of the one under consideration was void. In the last case the judgment was offered as a set-off in a subsequent suit between the parties. The chief judge, I am confident, proceeded on the distinction referred to, and he would not, I think, have hesitated to pronounce the judgment before Justice Elmendorf void.

It has been suggested that the decision of the motion, in *Oakley* v. *Aspinwall*, was not itself made by a competent number of judges. But this is a mistake. Only seven judges took part in deciding the motion, Judge TAYLOR not having heard the argument. The law did not then, as it now does, require five judges to concur in the decision. The legislature had declared six to be a quorum and a majority of a quorum was then competent to give a judgment.

I am in favor of affiming the judgment appealed from.

All the judges concurring,

Judgment affirmed.