(4 App. Div. 399.)

PEOPLE ex rel. POND v. BOARD OF TRUSTEES OF VILLAGE OF SARATOGA SPRINGS.

PEOPLE ex rel. FAY v. SAME.

(Supreme Court, Appellate Division, Third Department. April 20, 1896.)

1. MUNICIPAL CORPORATIONS — REMOVAL OF OFFICER — DISQUALIFICATION TO HEAR CHARGE.
    A village trustee who prefers charges against a village officer is disqualified to sit as a member of the board of trustees on hearing of the charges, as otherwise he would act as both accuser and judge. People v. Common Council of City of Auburn (Sup.) 33 N. Y. Supp. 166, disapproved.

2. SAME—EFFECT OF REMOVAL.
    The removal of a village officer by the board of trustees is illegal where the charges were preferred by one of the trustees who sat on the hearing, and without whom a quorum of the board would not have been present.

3. SAME—JUDICIAL ACTS.
    The board of trustees of a village acts judicially in a proceeding for the removal of a village officer.

4. JUDGE—DISQUALIFICATION BY INTEREST.
    The exception to the rule that judicial officers shall not act in a matter in whi h they are interested, in order to prevent a failure of justice, does not apply so as to permit a disqualified member of a board the powers of which may be exercised by a majority of its members (Laws 1892, c. 677, § 19) to take part in a judicial proceeding by the board.

Separate writs of certiorari, by Charles L. Pond and Michael J. Fay, to review the action of the board of trustees of the village of Saratoga Springs in removing relators from village offices held by them. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

James F. Swanick, for relator.
A. W. Shepherd, for respondents.

HERRICK, J. This is a proceeding to review by certiorari the action of the board of trustees of the village of Saratoga Springs in trying the relator, and removing him after such trial, from the office of street commissioner of said village. The office of street commissioner and manner of appointment are provided for by chapter 470 of the Laws of 1890. Section 7 of chapter 247 of the Laws of 1895 provides that:

"The board of trustees shall have power to remove any officer of their appointment except the president of the village, and they may also remove any member of the board of fire commissioners, or the board of police commissioners, or the board of street commissioners, or the board of water commissioners, upon charges, preferred and proven against them after notice of the hearing thereof."

The relator was appointed to the office of street commissioner, and entered upon the discharge of his duties May 1, 1892. On the 2d of July, 1895, Charles D. Thurber, one of the trustees of the village of Saratoga Springs, preferred charges against the relator of official misconduct. A copy of the charges was served upon the relator, evidence was taken by the board of trustees, and such proceedings had that he was declared guilty of the charges preferred and removed from office.

From the view that I have taken of one question involved in this case, it seems to me unnecessary to discuss the nature of the charges, or whether they were sustained by the evidence taken before such board. The courts will not scrutinize carefully the manner of proceeding upon trials had before boards like that whose proceedings are now under review, so long as they can see that substantial justice has been done, and no real right of the person so tried has been infringed upon. It is not to be expected that the same precision in relation to the laws of evidence or regularity of procedure will be observed by such tribunals as in regularly organized courts of justice, but those things which have always been deemed essential and fundamental in the exercise of judicial powers should be insisted upon. Powers such as those conferred by section 7 of chapter 247 of the Laws of 1895, for the trial of offenders, have been conferred upon other boards in this state for similar purposes, and the manner in which those powers should be exercised has been the subject of judicial inquiry. Where a board of police commissioners was authorized to make rules and regulations for the government and discipline of the force, to punish members of the force violating such rules, or who were guilty of conduct unbecoming an officer, and to adopt rules for the examination, hearing, and determination of charges against members of the force, the court, in speaking of the powers of such commissioners to try and punish police officers, said:

"They are empowered to punish a member who is guilty of conduct unbecoming an officer, and the only limitation upon their disciplining powers is the express one, that a trial shall be had upon written charges and upon a reasonable notice to the accused, and the implied ones, that that trial shall be a proceeding fairly conducted, that the decision shall be based upon evidence of the truth of the charges, and that no immunity or privilege secured to the accused by the law of the land shall be violated." People v. McClave, 123 N. Y. 512–516, 25 N. E. 1047.

One of the rights secured to an accused person by the law of the land is that his accuser shall not be at the same time his judge. That is a principle of law that is fundamental. It is the first requisite to a fair and impartial trial. It is a privilege that the law of the land guaranties to every man when his life or liberty, good name, fame, or property is involved. "It is a maxim of every code, in every country, that no man shall be judge in his own cause. The learned wisdom of enlightened nations and the unlettered ideas of ruder societies are in full accordance upon this point, and, wherever tribunals of justice have existed, all men have agreed that a judge shall never have the power to decide where he is himself a party." Insurance Co. v. Price, Hopk. Ch. 1.

When a cause was tried in a justice's court, and a verdict found for the plaintiff, and the justice, at the request of the counsel for the defendant, who was an attorney at law, in the absence of the counsel, prepared an affidavit for the defendant preliminary to the suing out of a certiorari, and also prepared the other necessary papers, it was held that the conduct of the justice was improper, and that the certiorari ought to be quashed. The court said that:

"By preparing the affidavit, the justice was in some degree committed to make his return conform to what he had previously alleged was the substance of the testimony and proceedings in the cause. But, independent of this consideration, the act complained of was calculated to impair the confidence of the opposite party in the impartiality of the officer, which is, of itself, an evil which should be carefully avoided. Next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." People v. Suffolk Common Pleas, 18 Wend. 550.

Judges are prohibited from acting in cases that they have been connected with when practicing at the bar, and the same principle is ingrafted into the constitution in prohibiting judges of appellate courts sitting in review of decisions made by them at trial or special term. So strict is the observance of this principle that it has been held that a disqualified judge cannot act, even by the consent of the parties interested,—that it is a matter of public concern that parties cannot waive.

In Oakley v. Aspinwall, 3 N. Y. 547, it was held that a judge of an appellate court, related to one of the parties to the appeal by consanguinity, could not act, even by consent of both parties,— the court, among other things, saying:

"The first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate, in the same cause. Mankind are so agreed in this principle that any departure from it shocks their common sense and sentiment of justice."

The judgment rendered in the case having turned on the vote of the disqualified judge, it was held that it should be vacated. This decision has since been followed and approved in Converse v. McArthur, 17 Barb. 410; In re Hancock, 27 Hun, 82; Chambers v. Clearwater, *40 N. Y. 310; Sentenis v. Ladew, 140 N. Y. 467, 35 N. E. 650.

In the case at bar the relator was convicted and removed from office by the vote of the man who preferred the charges against him. The board of trustees of the village of Saratoga Springs consists of 13 members. Laws 1895, c. 247, § 2. Seven of that number constitutes a quorum or majority of the body, and can exercise the power conferred upon the board to try village officers. Statutory Construction Act, Laws 1892, c. 677, § 19. At the time of the conviction and dismissal of the relator from office, there were seven members of the board of trustees present, including Mr. Thurber, who made the charges against the relator. Upon the question as to whether the charges were sustained, five voted aye, one voted no, and Mr. Thurber did not vote. Upon the question, "As punishment, shall Street Commissioner Charles L. Pond be removed from office?" six commissioners, including Mr. Thurber, voted in the affirmative, and one in the negative. Without spending any time in discussing the question as to whether the relator was in fact ever found guilty upon the charges preferred against him,—six trustees only having voted upon that question, one of the six voting in the negative, and there therefore being no quorum acting,—I will take the act of removing him from office as the test. Upon the final vote, seven voted, one of them the man who made the charges. Without his vote there was not a quorum acting. Except for his vote the ·relator would not have been removed from office. The presence of the disqualified man enabled them to act. The prosecutor constituted a part of the court. If he had withdrawn, there would not have been a sufficient number present to give them jurisdiction to act. Six trustees had no power,—no jurisdiction over the relator. The presence of the seventh trustee was necessary to give jurisdiction. The whole proceeding, then, turned upon Mr. Thurber's acting as a part of the quorum. He, in effect, condemned the relator. The accuser and prosecutor determined the truth of the charge brought by him. He decided his own case.

But it is said the board of trustees did not constitute a court, and that Thurber was not acting as a judge. Blackstone defined a court as consisting of at least three constituent parts, namely:

"The actor, or plaintiff, who complains of an injury done; the reus, or defendant, who is called upon to make satisfaction for it; and the judex, or judicial power, which is to examine the truth of the fact, to determine the law arising upon that fact, and if any injury appears to have been done, to ascertain, and by its officers to apply, the remedy." 3 Bl. Comm. 25.

In the proceedings now under review, we have the three constituent parts of a court as Blackstone defines them: The actor, Thurber, who complains of an injury done to the public; the defendant, the relator; and the judicial power to ascertain the truth

of the charges, the board of trustees. Witnesses were sworn, their evidence taken, and arguments heard, and the board passed upon the effect of that evidence. "To administer oaths, to hear evidence, to weigh its effect, to compare it with the law, and to decide the questions presented, are of the essence of judicial action." Barhyte v. Shepherd, 35 N. Y. 238–255. The action the board was taking was judicial, and, for the purpose of examining the charges against the relator, it was a court, and Thurber was one of the judges composing it. "It is a general and sound principle that, whenever the law vests any person with a power to do an act, and constitutes him a judge of the evidence on which the act may be done, * * * the person thus clothed with power is invested with discretion, and is, quoad hoc, a judge." Vanderheyden v. Young, 11 Johns. 150–158.

In the case of People v. Nichols, 79 N. Y. 582, which was a case where the relator, Nichols, had been removed from the office of police commissioner by the mayor of New York City, the court said:

"The relator was the mayor of the city, and its charter conferred upon him power to remove the defendant, but only 'for cause and after opportunity to be heard.' Sess. Laws 1873, c. 335, § 25. The power is not an arbitrary one, to be exercised at pleasure, but only upon just and reasonable grounds, and then not until after notice to the person charged, for in no other way could he have 'an opportunity to be heard.' The proceeding, therefore, must be instituted upon specific charges, sufficient in their nature to warrant the removal, and then, unless admitted, to be proven to be true. Defendant might also cross-examine the witnesses produced to support the charges, call others in his defense, and in these and other steps in the proceeding be represented by counsel. In no other way could the person sought to be removed have a due hearing or 'an opportunity to be heard,' and this condition must be complied with before the power of removal is exercised. Reg. v. Smith, 5 Q. B. 614; Osgood v. Nelson, L. R. 5 H. L. 636; People v. Board of Fire Com'rs of City of New York, 72 N. Y. 445. It follows, therefore, that the proceeding is judicial in its character, and, as a necessary consequence, is subject to review by a writ of certiorari, issued by the supreme court in the exercise of its superintending power over inferior tribunals and persons exercising judicial functions."

The trustees then, within these authorities, were, upon the trial of the relator, exercising judicial functions. A complaint was pending before them, witnesses were sworn and examined, and they were to determine, upon the evidence, whether the complaint was sustained. Everything that goes to make a judicial proceeding is present in this case, and the trustees who heard the proceedings were, for the purposes of those proceedings, judges.

It is said, however, it was necessary for Mr. Thurber to act; that the board of trustees is the only tribunal that can take cognizance of the charges against the relator; that therefore it was necessary for the board of trustees to take action, or it could not be taken at all; and that, consequently, the duty to act devolved upon each member of the board of trustees, notwithstanding he may be in such a situation as would disqualify him to act if a judge or juror,—and the case of People ex rel. Burby v. Common Council, 85 Hun, 601, 33 N. Y. Supp. 165, is cited to sustain that contention. I cannot acquiesce in the doctrine of the Burby Case.

I do not think it can be sustained, either upon principle or authority. Cases are to be found where judicial officers, or officials acting in a judicial capacity, have been permitted to act, notwithstanding the disqualification of interest; but I think, without exception, they have all been cases where, unless such officer was permitted to act, there would have been a failure of justice, for the reason that there was no other person who could act. They have been confined to cases where the judicial tribunal or body to act consisted of but a single person, and there was no other tribunal or officer before whom the proceedings could be taken, and the officer was permitted to act from necessity. This exception from the general rule has never been recognized where the judicial body or tribunal consisted of more than one officer, and is illustrated by the case of Oakley v. Aspinwall, 3 N. Y. 547, above cited, where a judgment pronounced by a court consisting of several members was vacated and set aside because one of the judges acting was related to one of the parties. In the case of Winans v. Crane, 36 N. J. Law, 394, it was held that, where one of the members of a board of five highway commissioners, who were authorized to lay out highways and assess damages, had acted in a case where he had more than the general interest of a taxpayer, his acting rendered the whole proceeding void, even if there was a majority of the commissioners left competent to act without his vote; that the fact that all power was lodged in the commissioners to lay out roads for the township, and that none could be laid out, if a majority of them were interested, unless they were permitted to act, did not create a legal necessity that would permit interested commissioners to sit in judgment in their own cases. And, the legislature having passed an act which was intended to cure the illegality of the proceedings, by legalizing such acts where a majority of the board, exclusive of the interested commissioner, had taken action, it was held that the legislature had no power to legalize such proceedings.

The case of In re Ryers, 72 N. Y. 1, cited to sustain the contention of the court in the Burby Case, it seems to me, is very far from sustaining it. In that case proceedings were taken before a county judge for the condemnation of lands, and it appeared that he had an interest in some of the lands affected, but he was the only officer before whom the proceedings then in question could be taken; and the court, after reviewing the authorities, formulated this rule:

"That, where a judicial officer has not so direct an interest in the cause or matter as that the result must necessarily affect him to his personal or pecuniary loss or gain, or where his personal or pecuniary interest is minute, and he has so exclusive jurisdiction of the cause or matter, by constitution or by statute, as that his refusal to act will prevent any proceeding in it, then he may act, so far as that there may not be a failure of remedy, or, as it is sometimes expressed, a failure of justice." 72 N. Y. 15.

It will be seen that that is very far from establishing the principle that a member of a court composed of several persons can be permitted to act in a proceeding before it to which he is a

party in interest. It will be observed that the court is very guarded in limiting cases where one interested in the result may act. It confines it to those cases where he has exclusive jurisdiction, and even then limits it, in addition, to those cases where the result need not necessarily affect him to his pecuniary loss or gain, and, still further, that his interest must be only minute; and, when all these conditions are complied with, he can only act so far in the matter as to prevent a failure of justice. These restrictions and limitations seem to me to make this case an authority for the reverse of the proposition contended for in the Burby Case.

In the case now under consideration, the body charged with the duty of investigating the complaint against the relator was composed of 13 members. It was not necessary that they should all act. The statute provides, as we have seen (Laws 1892, c. 677, § 19), that where three or more public officers are given power or authority, or are charged with a duty, to be performed or exercised by them as a board, a majority of them may exercise such power or perform such duty. So the doctrine of necessity, which has been applied to a sole judicial tribunal, has no application to the case under consideration. There was no necessity for Thurber to act in order to have the charges brought by him against the relator acted upon.

For the reason, then, that the accuser was permitted to sit in judgment upon the charges preferred by him, and that the relator was convicted by the vote of his prosecutor, I think that he has been deprived of one of the rights and privileges guarantied to him by the laws of the land, and that the proceedings of the defendants in trying the relator and removing him from office were illegal, and should be vacated and set aside. And it is therefore ordered that the proceedings of the defendants, the board of trustees of the village of Saratoga Springs, on the 9th day of August, 1895, adjudging the relator, Charles L. Pond, guilty of official misconduct, and removing him from the office of street commissioner of the village of Saratoga Springs, be, and the same hereby are, vacated and set aside, with $50 costs and disbursements.

The same question is presented in the case of People ex rel. Fay v. Board of Trustees of Saratoga Springs, argued at the same time with the one herein discussed, and a like order should be entered in that case.

PARKER, P. J., concurs. LANDON, J., concurs in result. MERWIN, J., dissents. PUTNAM, J., not acting.