In the Matter of the Application of JOHN F. EIGO, Petitioner, for an Order of Certiorari against FRED WHEELER, Mayor of the City of Hudson, Defendant.

Third Department, June 25, 1936.

*Coffin, Coffin & Inman* [*Samuel B. Coffin* of counsel], for the petitioner.

*R. Monell Herzberg, Corporation Counsel,* for the defendant.

CRAPSER, J. This case comes before the court on a certiorari order sued out by the petitioner to review the trial and findings by which he was dismissed from the office of assessor of the city of Hudson by Fred Wheeler, mayor of the city of Hudson.

The defendant Fred Wheeler took office as mayor of the city of Hudson on the 1st day of January, 1936. Thereafter under section 55 of the Hudson City Charter, chapter 669 of the Laws of 1921, as amended, he examined the petitioner and Samuel Berman, both of whom were assessors appointed by the previous administration. At such examination the same counsel appeared for the same parties as herein.

On the 12th day of March, 1936, the mayor preferred and filed charges against the petitioner, who was given notice, and the first hearing was held on the nineteenth of March in the common council rooms. There was a second hearing on the twenty-first day of March and a third hearing was held on the twenty-fourth day of March with a final hearing on March twenty-fifth and a decision by the mayor on the thirtieth day of March, removing the petitioner as assessor.

At the trial the defendant to substantiate charges produced the petitioner; William Wortman, the stenographer who took the testimony; Charles E. Hopkins, the person before whom the oath to the assessment roll was taken, and Samuel Berman, another assessor.

The charges preferred by the mayor come under two heads, " incompetency " and " malconduct." Under " incompetency " he charged that the petitioner was in the shipping department of the Universal Atlas Cement Company; that he never had been in the real estate business and had never made any study of the value of real estate in the city of Hudson; that he permitted his own property to be underassessed; that there was property in the second ward of the city of Hudson that was overassessed and that no correction was made, no attempt was made to ascertain the true value of the property assessed; that the assessments were made upon the basis of fifty per cent of the value; and that the rental value was not ascertained and taken into consideration in fixing the assessments; that some property was assessed less than its real value.

Under " malconduct " the petitioner was charged with falsely swearing to the affidavit that the property was assessed at one hundred per cent when it was only assessed at fifty per cent, and he was charged with making excessive assessments in certain instances and undervaluing property in other instances.

The fact that the petitioner was employed by a cement company and had never been in the real estate business was immaterial and irrelevant.

The petitioner had served six years as a member of the board of supervisors and had been appointed on committees to go around and value property. He had made a study of the real estate of the city of Hudson in a general way, checking on sales of property. After being appointed assessor he went to Albany and attended a school put on by the State for assessors.

He owned a piece of property in the city of Hudson which he had purchased from St. Mary's Church and which had been their convent. The front footage of his own property was described as sixty-four feet front, actually it was sixty and three-tenths feet. It was within two feet of the parochial school, which affected its value because artificial light had to be burned, and it carried a higher insurance rate than adjacent property.

Concerning the charge that property in the second ward was overassessed and that the assessors failed to correct the same, the proof shows that there was a reduction in that ward of about twenty-five to twenty-eight pieces of property. The assessors inspected every one of the 2,250 parcels of land in the city and examined them and inquired about renting conditions.

Evidence which was undisputed was given that property in Hudson had depreciated fifty per cent from the beginning of the depression. The evidence shows that prior to the present depression the assessments had been at a rate of fifty to fifty-three per cent and that practically the same valuation had been continued, which made the assessments for the year 1935 at full valuation.

The only evidence offered in the case was that the assessments in the year 1935, because of the depression, represented full value. The assessors attempted to find out the rental value and in some cases were successful and in some other cases were not.

The charges about the Allen street assessments and the Warren street assessments, when the errors are considered in front footage, is not a startling or surprising condition, but appears to be what one might expect in any city or in fact in any place in the State.

The defendant called the petitioner as a witness to prove the charges which had been preferred by him. He had been examined on the 3d day of January, 1936, previous to the making of the

charges, and he had given certain testimony on that hearing and when he was asked some of the same questions he apparently gave different answers.

A careful review of the evidence shows no inconsistency. The petitioner admits that for several years previous to 1935 the assessments of Hudson had been on a basis of fifty to fifty-three per cent of the value of the property and that he so testified on the hearing on the third of January. But on being examined in support of the charges he asserts that because of the depression what had been formerly fifty-three per cent valuation was now one hundred per cent.

In the examination in support of the charges he did quibble about the oath, which is explained by the fact that the assessment roll was completed and signed late at night; he does not deny taking the oath, but the quibble was over the time when he took it. The evidence on the record shows that the oath in the book was subscribed.

There were some inaccuracies in the roll pointed out during the hearing, but not greater inaccuracies than generally occur in assessments.

The defendant in his decision calls attention to the conduct of the counsel for the petitioner. The record shows that these hearings were largely attended, and that at different times the defendant had to direct that the applause stop when his counsel was examining witnesses. The record exhibits considerable feeling between the counsel for the petitioner and the defendant, and there is as much ground to find fault with the conduct of one attorney as with the other. It was not a dignified proceeding.

The petitioner was asked these questions and made these answers: " Q. That conversation with Mr. Herzberg, state what it was. It was out in the hall, wasn't it? A. Yes, sir, it was outside the door of the common council chambers and the board of aldermen were coming out for a caucus, I presume, and I started to speak to one of the aldermen and Mr. Herzberg called me and said, ' Eigo, the mayor wants to see you in the office right away.' I said, ' I am too busy. I will see him later.' He said, ' I'll tell you. I want your resignation by Saturday noon or I'll prefer charges against you.' Q. That is, he was the one wanted it and he was the one going to prefer charges? A. Yes. Q. Did he at any other time request your resignation? A. The mayor? Q. No, Herzberg. A. No. Q. Have any charges been preferred against you other than we are hearing now? A. No, sir. Q. So he never preferred charges personally, so far as you know? A. No, sir."

The hearing which the petitioner was entitled to under the city charter should not have been " 'a mere form to precede a predetermined removal' * * * but must be fair in all respects, based upon an impartial review of evidence to the exclusion of knowledge possessed by the trier of fact and free from prejudicial errors of law." (*People ex rel. Packwood* v. *Riley*, 232 N. Y. 283, 286.)

The petitioner asserts that he was compelled to be a witness against himself contrary to article 1, section 6, of the Constitution.

The defendant attempted to compel the petitioner to testify that he had taken a false oath in swearing that the property on the assessment roll had been assessed at full value and in attempting to impeach the witness by offering in evidence the testimony given at the January third hearing.

The petitioner asserts that the mayor was without jurisdiction to hear and decide the charges against the petitioner for the reason that he could not act at the same time as accuser, prosecutor and judge.

" Where it is so provided by statute and it is necessary for a person either individually or as a member of a board to act in a judicial capacity to prevent injustice and to maintain reasonable discipline in the department of which he is a member, the action of such person should be and is upheld although it results in his being both accuser and judge or of passing upon a question of fact about which he has personal knowledge. * * *

" When it is not necessary so to act the opposite rule should and does prevail. (*People ex rel. Pond* v. *Trustees, Saratoga Springs*, 4 App. Div. 399.) " (*People ex rel. Hayes* v. *Waldo*, 212 N. Y. 156, 172, 173.)

The record shows that there was no court review of any assessment for the year 1935 and that from the large number of taxpayers and property owners, representing over 2,200 different parcels of property, no taxpayer or owner of property was called, but that the mayor depended upon the testimony of the assessors to substantiate his charges.

A careful reading of the testimony fails to show any sufficient or competent proof of any " incompetency " or " malconduct " on the part of the petitioner. The evidence in the record discloses that the assessors made some errors in the assessment rolls for the year 1935, both in valuation and in description of property, but they were not unusual or extraordinary and were not sufficient to justify the removal of the petitioner.

There was no competent proof of the facts necessary to be proved in order to authorize the making of the determination that has

been made, and there is such a preponderance of proof against the existence of any of those facts that a verdict of a jury affirming the existence thereof, rendered in an action in Supreme Court, triable by jury, would be set aside by the court as against the weight of evidence.

The determination of the defendant is annulled and the petitioner is reinstated as an assessor of the city of Hudson, with fifty dollars costs and disbursements.

RHODES, BLISS and HEFFERNAN, JJ., concur; HILL, P. J., dissents.

Determination annulled, with fifty dollars costs and disbursements, and petitioner reinstated as an assessor of the city of Hudson.