**Joachim HAGOPIAN, Plaintiff,**

v.

**Major General William KNOWLTON, Superintendent, United States Military Academy et al., Defendants.**

**No. 72 Civ. 2814.**

United States District Court, S. D. New York.

July 21, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, by David Land, Asst. U. S. Atty., for defendants.

Rabinowitz, Boudin & Standard, by Joan Goldberg, New York City, for plaintiff.

## MEMORANDUM

BRIEANT, District Judge.

Plaintiff, a third-year cadet at the United States Military Academy, West Point, New York ("USMA") in this District, seeks a preliminary injunction pending trial of the action to prevent his final separation from USMA, enjoining and restraining defendants from ordering plaintiff to active duty in the United States Army and requiring defendants to reinstate plaintiff in USMA as a cadet in good standing so that he may continue his studies and training, all pending a trial of the action.

He is to be expelled because he received 107 demerits, disciplinary in nature, during the period from December 21, 1971 to June 7, 1972, in which 102 was the maximum number allowed. The complaint seeks declaratory and injunctive relief against defendants in their individual and official capacities. Plaintiff is a citizen of the United States and of the State of Massachusetts. Jurisdiction is based on 28 U.S.C. §§ 1331, 1361, 2201 and 2202.

Plaintiff asserts that the procedures by which he was cashiered from West Point violate his Fifth Amendment rights to due process of law.

 The litigation seeks to test whether under currently held constitutional notions, procedures followed at USMA generally, and in this case, amount to a deprivation of due process. Plaintiff's constitutional claims cannot be dismissed without an evidentiary hearing. Wasson v. Trowbridge, 382 F. 2d 807 (2d Cir. 1967). The test to be applied is twofold; are the duly constituted procedures valid, and were they applied according to their terms in plaintiff's case. (*Wasson, supra.*)

USMA is an educational institution of outstanding prestige and honorable tradition. It trains volunteer members of the military service, at Government expense, in a course of academic, military, physical and character training, designed to prepare them for service as career officers in the United States Army. Preparation to accept full responsibility for all that they do or fail to do, and the placing of loyalty to the Service above self-interest, or loyalty to friends or associates, is a paramount goal of this course of training. The disciplinary system at USMA is characterized as "correctional and educational in nature, rather than being legalistic and punitive." Section 401, Chapter 4, Regulations, U.S. Corps of Cadets, as amended to November 1, 1971, hereinafter cited as "Regs.").

Relying on the foregoing expressions of policy, a cadet receiving a "Class III

Delinquency" or an award of demerits for misconduct at the lowest level of culpability, should not be expected, at his peril, to make every such award of demerits a *cause celebre* to be argued or litigated to the fullest reach of due process. Rather, he should be expected to accept his demerits, and consequent punishment, in the correctional and educational spirit in which imposed. It is against the interests of the academy, public and the cadet to encourage him at great risk to protest and cavil over every adverse determination.

Delinquencies are classified. "Class I and II Delinquencies" may generally be described as of a serious nature. Class I Delinquencies may only be awarded by the Commandant, and Class II by the Regimental Commander, subject to the approval of the Commandant. A Class I Delinquency results in 15 demerits and a Class II Delinquency in from 9 to 15 demerits, depending on gravity.

Class III Delinquencies, with which this action is concerned, represent "offenses of a lesser nature for which final action will be taken by the Company Tactical Officer." Such offenses include: [Regs. § 403(c)]

Possession of unauthorized articles;

Failing to comply with general or specific instructions or published memoranda (unintentional);

Rusty, missing, dirty or torn articles of any kind;

Violations of uniform regulations;

Violations of prescribed standing classroom instructions;

General inattention;

Responsible cadet failing to maintain order or discipline; and

Discourtesies or bad manners.

Reports of a delinquency may be submitted at any time by officers and by civilian instructors, and by senior cadets.

As plaintiff accumulated 107 demerits as of May 21, 1972, during this period, he was discharged without a hearing.

The Company Tactical Officer, who is the cadet's immediate superior takes final action on Class III offenses. He may initiate the award of demerits, or report the delinquencies. He reviews his own reports and the reports of others each day, and awards demerits or not on the basis of the reports. He may, but need not, require an explanation of the cadet's conduct. When demerits are awarded, the cadet may either sign the award and concede its validity, or make an explanation on the reverse side of the form.

As the whole atmosphere of this disciplinary arrangement is intended to be "correctional and educational in nature, rather than legalistic and punitive", (*supra* p. 30) it follows that cadets often do not dispute with their Tactical Officer the validity of reports, particularly reports initiated by him in the first instance—they seek reconsideration or offer explanations only as they approach the limit of demerits. The cadet may submit a written reconsideration request, but must do so before 8:00 A.M. of the day following the posting of the weekly delinquency report.

If the cadet exceeds his accrued demerit allowance, he is interviewed by the Company Tactical Officer to determine if the awards are "correct and just".

As to plaintiff, his Tactical Officer was the reporting officer for 7 out of 16 offenses charged, which resulted in an award of 46 demerits, out of 107. This same officer reported him, made the awards, subsequently determined that the awards were correct and just, and then, in Hagopian's case, made a recommendation to the Regimental Commander to refer the case to the "Academic Board" for consideration of expulsion.

There was an unfortunate merger of function in the Tactical Officer. He was placed in the undesirable position of being the one required to report and the one who acted upon the report and the one who reviewed his own action. No procedure exists for a hearing or the taking of evidence or the taking of testimony of witnesses, nor is there any legal counseling available.

Such merger of prosecutorial and judicial function may be entirely satisfactory for purposes of "correctional and educational discipline" whereunder reasonable punishment is imposed to improve the efficiency or character of a cadet. It does not satisfy due process or the simple needs of natural justice, where, as here, a cadet will be also subject to a substantial forfeiture and irreparable damage, in the nature of expulsion.

There is nothing new to our jurisprudence in the theory that no single person should be both prosecutor and judge in a cause. As long ago as 1896, it was held:

" . . . his accuser shall not be at the same time his judge. That is a principle of law that is fundamental; . . . it is a privilege that the law of the land guarantees to every man when his life or liberty, *good name, fame, or property* is involved." (People ex rel. Pond v. Board of Trustees etc., 4 App.Div. 399, 39 N.Y.S. 607) [Italics added]

See also, In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

At the Academic Board level, the cadet may submit in writing additional evidence not previously submitted, but there is no adversary hearing and no further appeal, except that plaintiff, like all soldiers, had the right to make a request to see the Commandant. He says he made such a request on June 9th to the Company Tactical Officer, but it was not acknowledged, and he did not in fact see the Commandant.

We are concerned on this application primarily with the issue of procedural due process. Little attention need be given to the merits of plaintiff's expulsion, but some reference thereto may be helpful. Plaintiff, who describes himself in his letter to the Academic Board as having "gone through three years of West Point, bucking the system all the way", had on April 30, 1972 accrued 12 demerits more than his cumulative monthly allowance. At that rate it appeared likely he would exceed the permitted semester total. The excess was attributable in large part to an undisputed Class I Delinquency. He had also received two Class III Delinquencies, 5 points each, from the Company Tactical Officer on the 25th and 26th of April for being in need of a haircut. While Plaintiff does not dispute the first such award, he urges that he did not have the opportunity to comply before the second delinquency was awarded on the following day. On April 27th he was awarded 8 additional demerits for failing to respond to correction (dirty uniform). If any of these disputed demerits are set aside, he will not be dismissed.

On May 31st when he was offered the opportunity to submit (by written statement only) additional evidence for consideration by the Academic Board, Hagopian, without any advice of counsel, wrote a letter seeking another chance, but not seriously disputing the demerits awarded to him. This may have been a calculated waiver in the belief that seasoned officers administering the affairs of the Academic Board would be more likely to respond to this sort of letter than they would respond to lawyer-like pettifoggery and dispute as to whether the dirty uniform was the fault of the cleaner, or whether there was adequate time to get a haircut between two consecutive awards. If so, it failed. It may be, however, as plaintiff now asserts, that given opportunity to consult counsel, he could have raised material issues of fact, as to which he had never had a "fair hearing".

The Academic Board is empowered to "act upon such deficiency [in conduct] as in the case of a deficiency in studies" (Regs., § 9.05). Under its standard operating procedure it is required to separate "a cadet . . . whose potential does not warrant retention" [¶XXIV(c) (3) of Dean's S.O.P.]

Such a determination made without a hearing is based generally, and in the case of plaintiff was based, on the cadet's written submission, hearsay submissions from others, and the view of the Academic Board on the relatively subjective question of "potential". In-

cluded in the submission to the Academic Board was the opinion of his Tactical Officer that:

"Cadet Hagopian's deficient conduct standing reflects his attitude and approach to cadet life. His performance improved markedly when he finally realized that he was nearing deficiency in conduct. * * * He is considered to be uncouth and slovenly by his peers, . . . This cadet has minimum academic and leadership abilities which have been further depressed by his own negative attitude. He should not continue to receive the privilege and status of being a cadet."

Injection into the issue before the Board of the subjective questions of potential and attitude makes the expulsion of this third year cadet, for the cumulative effect of five excess demerits, more open to possible arbitrary denial of due process. The plaintiff never received the opportunity to be personally present before the Academic Board or an impartial hearing officer, the opportunity to testify, or present evidence, or confront adverse testimony, or to examine and explain the adverse materials considered by the Board and respond thereto with any exculpatory information or evidence.

In short, he received no fair hearing, and it does not appear that he waived his rights thereto. While this Court believes the presence of a civilian lawyer at a "fair hearing" under the circumstances of the case might well be counter-productive, he should have received the advice of some counsel learned in the law, military or civilian, before making his submission to the Academic Board. It is undisputed that when plaintiff sought legal assistance from Captain Joel Collins, J.A.G.C., stationed at USMA, such advice was not forthcoming and plaintiff was told "attorneys were discouraged from counseling cadets who were called to appear before conduct boards" (Hagopian Affidavit p. 4).

■ In light of the foregoing, plaintiff shows probability of success in this litigation. Assuming this litigation is ruled by Wasson v. Trowbridge, *supra*, as suggested by defendant, plaintiff has been denied due process. He has not been "given a fair hearing at which he is apprised of the charges against him [that he was deserving of expulsion and lacking in "potential"] and permitted a defense" (*Wasson*, p. 812 of 382 F.2d.) He was not "given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence." (*Ibid*, p. 812.)

In Krawez v. Stans, 306 F.Supp. 1230 (E.D.N.Y.1969, *Weinstein*, J.) a preliminary injunction issued reinstating a merchant marine cadet expelled after administrative proceedings, for acts constituting moral turpitude. The Court said:

"The hearing in the instant case was not required by statute to be determined on the record. Instead it was an unstructured inquiry conducted pursuant to Academy regulations. Thus, under the Administrative Procedure Act, the substantial evidence rule does not apply to a review of these Academy proceedings.

Additionally, the administrative record was inadequate. No legal personnel were at the hearing, questioning was unorganized and the sole witness supporting the Special Board's conclusion was questioned only very briefly over the telephone. There was no opportunity to observe his demeanor.

In light of the difficult constitutional and other questions presented, a more reliable factual basis is required. See Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1968). Under these circumstances, no concept of deference to administrative expertise militates against a *de novo* hearing."

Similar relief has been granted on grounds less moving than the instant case. See Grimm v. Brown, 449 F.2d 654 (9th Cir. 1971) (security violation by Air Force officer); VanBourg v. Nitze, 128 U.S.App.D.C. 301, 388 F.2d

557 (1967) (discharge other than honorable based on *ex parte* statements as to naval officer's disloyalty).

While plaintiff shows a reasonable probability of success under the rule of *Wasson,* decided in this Circuit in 1967, the Court is also mindful of recent cases expanding the constitutional right to procedural due process, and availability of a "fair hearing" in favor of welfare clients (Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287), convicts on parole or probation (Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 and United States ex rel. Bey v. Conn. State Bd. of Parole, 443 F.2d 1079 (2d Cir. 1971) and disruptive and defiant state prisoners (Sostre v. McGinnis, 442 F.2d 178, 198, 203 (2d Cir. 1971). Should those requirements be any less for a USMA cadet in his third year whose career has been terminated under the circumstances of this case? We think not.

That plaintiff has been irreparably damaged may not be disputed. His professional education has been cut off and each day's absence renders his academic status more perilous if he is ultimately restored to duty. A substantial investment of public funds has been made in his education to date.

The motion will be granted, but on a restricted basis to assure that there is a balancing of the equities and that the conduct by defendants of their important mission is not in any way jeopardized by judicial interference.

A preliminary injunction will issue pending trial or the further order of this Court, restraining the defendants from ordering plaintiff to active duty and also requiring him to be readmitted to the program of instruction and training at USMA from which he has been excluded. He need not be readmitted to athletics or extra-curricular activities. He shall not be subject to any forfeiture or unreasonable detriment by reason of his absence during the pendency of this motion.

Plaintiff is cautioned, while enjoying the benefits of this injunction that he must comport himself in all respects as required of an officer, a gentleman and a cadet in good standing. Specifically, he shall avoid controversy or conduct likely to lead to disruption, or interfere with the morale or discipline of the institution. He should avoid unnecessary discussion or controversy with other cadets arising by reason of this litigation, and should not become their cynosure.

Should the Superintendent find, as a result of a "fair hearing" (United States ex rel. Bey v. Conn., etc., *supra*) conducted by himself or an impartial hearing officer designated by him, that any actions of plaintiff subsequent to the date hereof are so disruptive or harmful to the public interest as to require suspension of plaintiff's attendance at USMA pending trial, he may be suspended on not less than 48 hours notice to plaintiff's counsel and the Court, notwithstanding such injunction.

The foregoing constitutes the findings of fact and conclusions of law of this Court, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Settle order on two days notice. No bond will be required.