In the Matter of ALFONSO PELAEZ, Petitioner, v WATER-
FRONT COMMISSION OF NEW YORK HARBOR, Respon-
dent.

Second Department, September 13, 1982

### APPEARANCES OF COUNSEL

*Fein, Silverbush, Katz & Linn, P. C.* (*Michael Linn* of
counsel), for petitioner.

*David B. Greenfield* (*Jerome J. Klied* of counsel), for
respondent.

### OPINION OF THE COURT

O'CONNOR, J.

This case is another in a recent series of employee
disciplinary determinations challenged in court because
the government employer ignored the fundamental dis-
tinction between an adversarial and an inquisitorial pro-
ceeding. Under the circumstances we are required to annul
the determination dismissing petitioner and remit the
matter for a new hearing before a different hearing officer.

In this case the hearing officer was challenged at the
outset on the ground that he had knowledge of the matter
acquired prior to the hearing in his capacity as general
counsel to the respondent Waterfront Commission of New

York Harbor. The hearing officer declined to disqualify himself because he had no recollection of having been exposed to any information other than that contained in the formal charges against petitioner; he noted that, in any event, he could conduct the hearing in a neutral and detached fashion.

The disciplinary hearing testimony of the executive director of the respondent Waterfront Commission, however, revealed the hearing officer's considerable involvement as prosecutor in the events leading up to petitioner's hearing and in collateral litigation respecting petitioner's suspension without pay during the hearing. Although the executive director denied ever having discussed, prior to the hearing, the substance of the charges eventually preferred against petitioner, he did recall that the hearing officer had been present at numerous meetings with him about the case prior to and during the hearing, and testified to the hearing officer's significant role in preparing the draft of the executive director's affidavit in opposition to petitioner's initial application to Special Term for vacatur of his payless suspension pending determination of the charges.

Using his diary, the executive director testified that the hearing officer had been present as general counsel during meetings on December 28, 1978 respecting petitioner's being subpoenaed before a Federal Grand Jury investigating one Anthony M. Scotto, president of the International Longshoremen's Association local covering the Brooklyn waterfront area supervised by petitioner; a meeting the next day during which the hearing officer and another official reported that the United States Attorney's office had informed them that petitioner was a target in relation to his alleged dealings with Scotto, had shown them a photograph of petitioner at an undisclosed location in connection with their investigation, and had also said something about petitioner's being a double agent; a February 20, 1979 meeting at which the hearing officer, as general counsel, was asked whether petitioner could be put on payless leave, and to which inquiry the hearing officer responded affirmatively; a March 13, 1979 meeting at which the executive director informed petitioner of his

payless suspension a day before his leave ran out; a March 14, 1979 meeting at which the notice of charges and hearing was prepared; a March 15, 1979 meeting at which petitioner's Special Term application to vacate his suspension was discussed and staff attorneys were assigned to the matter; a March 16, 1979 meeting at which affidavits in the Special Term matter were discussed; a March 29, 1979 meeting at which the hearing officer was designated after a discussion about the possibility of appointing someone else within the commission; and a May 7, 1979 meeting — four days after the hearing had commenced — regarding petitioner's request for a free transcript and the handling of the commission's appeal from Special Term's ruling on petitioner's application.

The executive director testified that the hearing officer, as general counsel, prepared the drafts of his and another officer's affidavits opposing petitioner's application to Special Term. The witness' affidavit, as drafted by the hearing officer, spoke of petitioner's informing the commission of his being subpoenaed "concerning his conduct while employed with the Commission", and the commission's learning the next day of his being a target rather than a "mere witness". The draft of the affidavit said petitioner, at a January 8, 1979 meeting with the witness, had "informed" the commission for the first time of his meeting with Scotto a year earlier, which meeting had been observed by Federal agents surveilling Scotto. Such meeting was without the commission's knowledge or consent, according to the draft of the affidavit, and petitioner was in charge of the same Brooklyn waterfront covered by Scotto's union. Also, petitioner said he had met with Scotto on another occasion in 1978, at the union's main office in lower Manhattan. Petitioner "admitted" — according to the draft — that the meeting did not take place openly, but occurred in a hallway a flight above or below the union's office; this meeting too went unreported. Petitioner also "admitted" using a code name, apparently known to Scotto, rather than his real name.

The witness further testified that at a meeting with the hearing officer, as general counsel, on March 20, 1979, the affidavit was changed in some respects. These changes

were to substitute the verb "stated" for "admitted" and to delete the comment about Scotto's knowledge regarding the code name in favor of an allegation that petitioner had offered "no plausible or credible explanation for these meetings".

The other affidavit prepared by the hearing officer, as general counsel, and signed March 19, 1979 by another officer made the point that Scotto's notoriety had been known to petitioner at the times in question, and that petitioner had arranged the meetings with Scotto.

At the conclusion of the disciplinary hearing, the hearing officer made certain findings of fact. Among them were petitioner's unblemished record of 21 years' service prior to meeting off-pier at least twice with Scotto, who was then under Federal investigation, and petitioner's failure to inform the commission of these meetings. The hearing officer stated that petitioner had not disputed the essential findings relating to misconduct except as to the first meeting, which petitioner had sought to place a year earlier than the actual event so as to claim that he had reported it to his superiors; however, the hearing officer rejected that claim based on contradictory evidence, including the testimony of a Federal agent. The hearing officer's recommendation, which sustained the bulk of the charges, was accepted by the commission in its determination under review in this court.

The commission's determination, based upon the hearing officer's recommendation after a hearing, cannot stand. The hearing afforded petitioner was inadequate because of the commission's failure to designate as hearing officer someone who in appearance as well as in fact was neutral and disinterested in the successful prosecution of the case.

It is to be noted at the outset of this analysis that no issue was raised by the parties about the propriety of applying New York law to a determination by the commission, which is a bistate agency created by interstate compact between New York and New Jersey (L 1953, ch 882), and that the commission has expressly declined to argue that petitioner's nontenured status permitted it to determine his fate without regard to those due process rights

attached to tenured status (see, e.g., *Matter of Beneky v Waterfront Comm. of N. Y. Harbor,* 42 NY2d 920, cert den 434 US 940). It should also be pointed out that the issue is not the propriety of the internal separation of the investigative, prosecutorial, adjudicatory and policy-making functions within the administrative agency (see *Withrow v Larkin,* 421 US 35, 46-55; *Komyathy v Board of Educ.,* 75 Misc 2d 859, 865), or the subordination of both prosecutorial staff and hearing officers to one agency superior (see, e.g., *Matter of Felin Assoc. v Altman,* 41 AD2d 825, affd 34 NY2d 895; 1 Benjamin, Administrative Adjudication in the State of New York, pp 65-77). The issue, rather, is whether petitioner was deprived of a fair hearing, perhaps gratuitously undertaken by the commission, because the hearing officer was familiar with substantially all the pertinent facts before the hearing commenced and because he acted in an adversary role prior to and during the hearing with respect to petitioner's application before Special Term to vacate his payless suspension.

The governing principle in such a case was forcefully stated in *People ex rel. Pond v Board of Trustees of Vil. of Saratoga Springs* (4 App Div 399, 402): "One of the rights secured to an accused person by the law of the land is, that his accuser shall not be at the same time his judge; that is a principle of law that is fundamental; it is the first requisite to a fair and impartial trial; it is a privilege that the law of the land guarantees to every man when his life or liberty, good name, fame or property is involved."

Absent a showing of manifest necessity for the use of an otherwise disqualified officer (see *Federal Trade Comm. v Cement Inst.,* 333 US 683, 700-703; *Evans v Gore,* 253 US 245, 247-248; *Matter of Morgenthau v Cooke,* 56 NY2d 24, 29, n 3; *Sharkey v Thurston,* 268 NY 123, 126-129; *People ex rel. Hayes v Waldo,* 212 NY 156, 172-173; *Matter of Eigo v Wheeler,* 248 App Div 53, 57; *People ex rel. Pond v Board of Trustees of Vil. of Saratoga Springs, supra; Matter of Leefe,* 2 Barb Ch 39), an adjudication will be annulled even without evidence in the record of actual bias or prejudice if the body or officer making the determination had personal knowledge of relevant facts prior to the hearing, had initiated the investigation or had caused the charges to be

preferred (see *Matter of Murchison,* 349 US 133; *Grolier, Inc. v Federal Trade Comm.,* 615 F2d 1215; *American Cyanamid Co. v Federal Trade Comm.,* 363 F2d 757; *Amos Treat & Co. v Securities & Exch. Comm.,* 306 F2d 260; *Trans World Airlines v Civil Aeronautics Bd.,* 254 F2d 90; *Matter of Sander v Owens,* 82 AD2d 968; *Sinicropi v Milone,* 80 AD2d 609; *Matter of O'Reilly v Pisani,* 79 AD2d 973; *Wind v Ravo,* 69 AD2d 879; *Matter of Aiello v Tempera,* 65 AD2d 791; *Matter of Waters v McGinnis,* 29 AD2d 969; 3 Davis, Administrative Law Treatise [2d ed], § 18.1). The same disqualification applies to the hearing officer or panel, such as the hearing officer in this case, charged with recommending a specific disposition to the body or officer making the determination (see State Administrative Procedure Act, § 307, subd 2; US Code, tit 5, § 554, subd [d]; *Arnett v Kennedy,* 416 US 134, 196-199 [WHITE, J., dissenting in part]; *Matter of McLaughlin v North Bellmore Union Free School Dist.,* 73 AD2d 935; *Matter of McDonald v Department of Mental Hygiene of State of N. Y.,* 34 AD2d 997; *Matter of Cross v Pearsall,* 29 AD2d 553). Although his findings of fact are not binding upon the commission, the hearing "officer's findings are [nevertheless] entitled to considerable weight and are significant in determining whether substantial evidence exists to support the charges (*Matter of Simpson v Wolansky,* 38 NY2d 391; *Matter of Kelly v Murphy,* 20 NY2d 205; *Matter of Gristmacher v Felicetta,* 57 AD2d 444, mot for lv to app den 42 NY2d 811)" (*Matter of Henry v Wilson,* 85 AD2d 885).

As was noted by Commissioner Robert M. Benjamin in his landmark study of administrative adjudication in this State (1 Benjamin, Administrative Adjudication in State of New York, pp 108-109):

"That the hearing officer should approach the hearing with an open mind, without bias and without prejudgment of the issues, is the primary requisite of fair hearing procedure. If that condition is not met, the opportunity to be heard becomes illusory, and the hearing a mere form. It is almost as important that the appearance of bias or prejudgment be avoided.

"This is a primary consideration to be borne in mind in the initial step of selecting a hearing officer, whether he

has power to decide the case before him or power only to recommend. It is, for one thing, desirable that a hearing officer be selected who has had no such prior contact with the case as might lead even to the appearance of prejudgment or bias."

The respondent commission attempts to characterize this case as one involving *de minimis* knowledge under the rule stated in *People ex rel. Hayes v Waldo* (*supra*, p 166): "The fact that a judge has some personal knowledge of an act or statement about which uncontradicted testimony is given upon a trial held by him should not affect the judgment rendered or order made therein particularly if the testimony received is not of substantial importance." Here, however, not only had the hearing officer taken an active role as general counsel before sitting as umpire at the hearing, but he continued to act as an advocate for the commission in collateral litigation involving the same issues before Special Term even after the hearing had commenced. The hearing officer was sitting in on discussions respecting the commission's course of conduct in opposing petitioner's legal attack on his payless suspension, and this course had in no small way been established by the hearing officer's own efforts in drafting the affidavits to demonstrate to Special Term the basis upon which the commission had acted in suspending petitioner, a basis amounting in essence to probable cause. Under such circumstances, the hearing afforded petitioner was but a "formality", and served as no lawful basis for the commission's determination to dismiss him from its service.

Given the commission's indiscriminate and unnecessary fusion of the roles of adjudicator and prosecutor in what purported to be an adversarial rather than inquisitorial fact-finding procedure before a neutral hearing officer, the hearing was flawed from the beginning and the determination based upon it must be annulled and the matter remitted for a new hearing before a different hearing officer.

WEINSTEIN, J. P., BRACKEN and RUBIN, JJ., concur.

Proceeding pursuant to CPLR article 78 to review a determination of the respondent Waterfront Commission of New York Harbor, dated November 26, 1980, which,

after a hearing, dismissed petitioner as an employee upon a finding of misconduct.

Petition granted to the extent that the determination is annulled, on the law, without costs or disbursements, and the matter is remitted to the respondent for a new hearing before an officer other than the one who presided over the hearing leading to the determination under review.